YOUNGBLOOD GROUP

v.

LUFKIN FEDERAL SAVINGS AND
LOAN ASSOCIATION.

No. 9:95–CV–163.

United States District Court,
E.D. Texas,
Lufkin Division.

June 3, 1996.

Roger S. McCabe, Mehaffy & Weber, Beaumont, TX, for Youngblood Group.

Kenzy Donovan Hallmark, Zeleskey Cornelius Hallmark Roper & Hicks, Lufkin, TX, for Lufkin Federal Savings & Loan Association.

## MEMORANDUM OPINION OVERRULING THE PARTIES' OBJECTIONS AND ADOPTING THE REPORT OF THE UNITED STATES MAGISTRATE JUDGE

HEARTFIELD, District Judge.

Pending is defendant's motion to dismiss for failure to state a claim upon which relief may be granted.

This motion was referred to United States Magistrate Judge Earl S. Hines pursuant to Title 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for disposition of the case. The magistrate judge on March 4, 1996 submitted a report recommending that defendant's motion to dismiss be denied as to plaintiff's claim under 12 U.S.C. § 1464(q)(1).

This court has received and considered the Report and Recommendation of the United States Magistrate Judge, along with the record, pleadings and all available evidence. Defendant filed objections to the report and recommendation on March 13, 1996. Plaintiff filed objections to the report and recommendation on March 18, 1996. This requires a *de novo* review of the specific portions of the report to which objections have been made. FED.R.CIV.P. 72(b).

### I. Jurisdiction and Claims

Plaintiff invokes federal question jurisdiction by asserting a federal statutory tort claim based upon anti-tying provisions of the Thrift Institutions Restructuring Act. *See* 12 U.S.C. § 1464(q)(1). Invoking the court's supplemental jurisdiction, plaintiff asserts a cause of action for breach of contract under Texas common law, together with a Texas statutory tort claim under the Deceptive Trade Practices—Consumer Protection Act. *See* TEX.BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 1987) (hereinafter "DTPA").

The alleged facts giving rise to these causes of action are recited in the report of

the magistrate judge. Report and Recommendation Regarding Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) at 871–72. Neither party objects to the magistrate judge's recitation of the nature of the suit.

## II. Defendant's Motion to Dismiss

Defendant asserted three grounds for dismissal of the federal claim: (1) the complaint failed to allege an "additional service" was required of plaintiff; (2) the complaint made no *prima facie* showing that the agreement between plaintiff and defendant was "unusual"; and (3) the complaint failed to allege that defendant sought to stifle competition.

Defendant asserted a single ground for dismissal of the DTPA claim: no cause of action is stated because plaintiff does not meet the definition of a "consumer."

Defendant did not seek dismissal of the common law breach of contract claim.

## III. Proceedings and Report of the Magistrate Judge

The magistrate judge heard oral arguments of counsel for the parties at a hearing convened on October 23, 1995. At the hearing, the magistrate judge raised the question as to whether plaintiff's federal claim was barred by waiver or estoppel. The magistrate judge's concern stemmed from the fact that the allegedly offending provisions were embodied in a bankruptcy reorganization plan, jointly agreed by the parties, and jointly submitted to the bankruptcy court for approval.

After considering the motions, briefs and arguments of the parties, the magistrate judge submitted a written report recommending that the motion to dismiss be granted in part and denied in part. Specifically, the magistrate judge concluded and recommended:

1. The complaint alleged that defendant required an additional service by demanding the right to market property surrendered to satisfy plaintiff's indebtedness. Thus, the motion should be denied insofar as it asserted that the complaint failed to allege an "additional service;"

2. There is no allegation that plaintiff provided some unusual property, credit, or service to defendant in exchange for cancellation of the indebtedness. Thus, the motion should be granted as to the claim based on 12 U.S.C. § 1464(q)(1)(B). However the motion should be denied as to the claim based on 12 U.S.C. § 1464(q)(1)(A) because there is no requirement for an allegation of unusualness under that provision; and

3. No allegation of anti-competitive motion is required to state a claim under 12 U.S.C. § 1464(q)(1)(A). Thus, the motion should be denied on this ground.

The magistrate judge again mentioned potential defenses of waiver and estoppel, as well as res judicata. Further, the magistrate judge noted that it is permissible for a court to raise such issues *sua sponte*. However, the magistrate judge concluded that *sua sponte* dismissal was not within the scope of the reference order, and further was a distinct prerogative of the judge to whom the case is assigned. Therefore, the magistrate judge made no findings, conclusions or recommendations on these grounds.

Finally, the magistrate judge made no findings, conclusions or recommendations regarding defendant's motion to dismiss the Texas DTPA claim. The magistrate judge determined it would be more appropriate to await decision of the district judge on the federal claim because if the federal claim were dismissed, the court might decline to exercise supplemental jurisdiction over the remaining state law claims.

## IV. Objections

### A. Plaintiff

Apart from its objection to the magistrate judge's decision to defer consideration of plaintiff's Deceptive Trade Practices–Consumer Protection Act (DTPA) claim pending final determination of the motion to dismiss the federal tying claim, plaintiff has four basic objections. First, Youngblood disagrees with the magistrate judge's finding that Youngblood failed to allege it was required to furnish credit, property, or service

to Lufkin in connection with the settlement of its debt with Lufkin other than the type of credit, property, or service usually provided in connection with such loan services. The magistrate judge then recommended that plaintiff's claims asserted under 12 U.S.C. § 1464(q)(1)(B) be dismissed. Report and Recommendation Regarding Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) at 11 n. 17.

The next three objections revolve around several matters that were raised but not decided in the magistrate judge's report. Specifically, Youngblood objects to the magistrate judge's comments regarding the potential applicability of the doctrine of *res judicata,* claiming that no right to bring suit pursuant to 12 U.S.C. § 1464(q)(1) existed at the time the bankruptcy court confirmed the parties' plan because no damage had yet been suffered. Youngblood also argues that judicial estoppel is inapplicable to bar the instant tying claim because the tying issue was not before the bankruptcy court. Finally, Youngblood, seemingly confusing the breach of contract claim with the tying claim, argues the doctrine of waiver is unavailable to bar the tying claim because "Plaintiff did not waive the right to complain if Defendant did not perform its duties under the plan merely by agreeing to the plan." Plaintiff's Objections to the Report and Recommendation of the United States Magistrate Judge at 2.

### B. Defendant

Like Youngblood, Lufkin objects to the decision to defer recommendation on the DTPA claim. Lufkin's other objections are listed as three separate objections, although in essence they form a single objection. Lufkin argues that it did not extend credit to Youngblood in agreeing to take title to the properties in lieu of foreclosure or proceeding before the bankruptcy judge. Lufkin argues that although several cases have stated that forbearance on the collection of a debt can be considered the "extension of credit" within the meaning of the federal antitying statutes, all cases in which this rule has been articulated are distinguishable be-cause they involved situations in which "the lender made or offered a new loan to the borrower to refinance the loan previously made." Defendant's Objections to the Report and Recommendation of the United States Magistrate Judge at 3.

### V. Discussion

Although both parties take the opportunity to formally object to the magistrate judge's decision to defer filing a recommendation on the DTPA claim, no specific legal basis for objecting is argued by either party. Rather, the parties simply reurge in summary form theories previously briefed on the DTPA claim. Because both judicial economy concerns and concerns of comity with state courts potentially existed in the posture in which the case stood before the magistrate judge, there is no valid objection to the decision to defer recommendation on the DTPA claim.

### A. Plaintiff's Objections

 Plaintiff claims that it "alleged that it was to provide ... unusual property, credit or service in exchange for cancellation of its indebtedness ... by showing that it was required to deed land to the Defendant as a payment of the debt, instead of the property being foreclosed upon." Plaintiff's Objections to the Report and Recommendation of the United States Magistrate Judge at 2. "Usual" is not defined in the Thrift Institutions Restructuring Act. Courts give the traditional banking practices exemption a broad reading. *See Flags I, Inc. v. Boston Five Cents Sav. Bank,* 831 F.Supp. 928, 935 (D.N.H.1993) ("[T]he three exemptions which are now collectively known as the traditional banking practice exemption were intended to be construed to permit legitimate banking practices that have no anti-competitive effect."). As discussed in the magistrate judge's report, it is not unusual for a commercial real estate lender to accept a deed in lieu of foreclosure. As several academic commentators have noted, this practice is becoming increasingly common due to the expense, delay, and negative publicity associated with foreclosure.[1] The magistrate

---

1. James R. Stillman, *Contractual Alternatives to* *Foreclosure: The Latest Deed–in–Lieu Develop-*

judge's conclusion that plaintiff failed to allege it was required to furnish unusual property, credit, or service is therefore adopted, as is the recommendation that any cause of action plaintiff attempted to assert under 12 U.S.C. § 1464(q)(1)(B) should be dismissed.

Plaintiff also argues in summary form that each of the following defenses is inapplicable under the facts of this case: res judicata, judicial estoppel, and waiver. The applicability of each of these defenses is examined in section III.

## B. Defendant

■ Defendant's primary objection relates to the issue of whether defendant extended credit to plaintiff. This was an issue of secondary importance in proceedings before the magistrate judge. It was not contested prior to this stage and has not been briefed. The issue was relegated to a footnote in the magistrate judge's report, as the main point of contention was whether Lufkin had required plaintiff to acquire some additional service.

In any event, the objection will not be sustained. The magistrate judge's report noted that forbearance on the collection of a debt could be equated with an "extension of credit" for purposes of the anti-tying statutes. Defendant in its objections cites three cases claimed to reiterate this principle.[2] Defendant then attempts to distinguish these three cases from the facts at hand by stating these cases all involved situations in which a lender refrained from collecting on a loan only after the lender made or offered a new loan to the borrower to refinance the loan previously made. This is simply a misstatement of the factual scenarios of those cases. Moreover, many courts, including the Fifth Circuit, have adopted the definition of "extension of credit" found in *Nordic Bank*.

*Amerifirst Properties, Inc.,* 880 F.2d at 824. Under this definition, "[a] particular practice should be considered an 'extension of credit' if it manifests the improper use of economic leverage that [the anti-tying statutes] seek[ ] to prevent." *Nordic Bank,* 619 F.Supp. at 554.

Under the *Nordic Bank* standard, plaintiff survives a motion to dismiss the tying claim on the ground that no extension of credit has been alleged. Plaintiff's complaint, its supplemental brief, and the argument of counsel at the hearing before the magistrate judge all serve to make clear that it is plaintiff's contention that plaintiff agreed to the deal in the reorganization plan, which was suggested by defendant, because it was the best bargain plaintiff felt it could get. Plaintiff had been experiencing a period of financial distress at the time the agreement was worked out. Plaintiff contends that one factor which was determinative of its decision to agree to the plan was the fact that defendant made various representations concerning the quality of efforts it would undertake to market and sell the property. For purposes of the motion to dismiss, then, it is at least an arguable theory under the pleadings and present posture of the case that Lufkin used its superior bargaining position to condition its agreement to forebear on the collection of the debt and to accept deeds to the subject property on plaintiff's acquiescence to the utilization of defendant's services to market the subject parcels.

## VI. Grounds Not Argued Before the Magistrate Judge

The defenses examined in this section were not argued at length before the magistrate judge. The magistrate judge advised the parties at the October 23 hearing of the court's concerns regarding the potential ap-

---

ments, Modern Real Estate Trans. (ALI–ABA) No. R181 ALI–ABA 1647, at 1649 (June 28, 1993); *see also* Michael Madison, *Deeds in Lieu of Foreclosure,* 20 Real Est.L.J. 247 (1992):

> In most states, mortgage foreclosures are complex and time-consuming. Foreclosure proceedings can take from three months to three years to finalize and sometimes even longer. At the vast majority of foreclosure sales, the only bidder is the foreclosing mortgagee. Moreover, deficiency judgments against bor-

rowers are usually worthless. Consequently, a more frequently utilized response to a workout situation has been the deed in lieu of foreclosure arrangement.

2. *Tri–Crown, Inc. v. American Fed. Sav. & Loan Ass'n.,* 908 F.2d 578 (10th Cir.1990); *Amerifirst Properties, Inc. v. FDIC,* 880 F.2d 821 (5th Cir. 1989); *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542 (S.D.N.Y.1985).

plicability of the doctrines of waiver and estoppel to preclude plaintiff's tying claim. That concern stemmed from the fact that the reorganization plan was submitted jointly for court approval as the bankruptcy court's final judgment. The parties were notified by the magistrate judge that he would take under advisement the issue of whether Youngblood could advance a tying claim based on the offending provisions of the reorganization plan which granted defendant the right to provide real estate marketing services. In response to the magistrate judge's concerns, plaintiff on November 17, 1995 filed a supplemental brief on its tying claim. Defendant filed no further argument with respect to its motion to dismiss.

In his report of March 4, 1996, the magistrate judge noted that it is permissible for a court to raise issues such as res judicata, judicial estoppel, and waiver *sua sponte.* Thus, the parties have had the opportunity at the magistrate judge's hearing, subsequent to that hearing, and after the issuance of the magistrate judge's report to argue these matters. The court therefore proceeds to address the issues of res judicata, judicial estoppel, and waiver, and concludes that defendant is entitled to dismissal of the tying claim based on these three distinct but related legal doctrines.

## A. Res Judicata

■ It is well established that "[c]onfirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar re-litigation of any issues raised or that could have been raised in the confirmation proceedings."[3] In order to ap-

ply the doctrine of res judicata in this Circuit, four requirements must be met:

(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; (4) the same cause of action must be involved in both cases.

*Eubanks v. FDIC,* 977 F.2d 166, 169 (5th Cir.1992). In addition, for the doctrine of res judicata to bar the present action, the present claim must have been capable of being raised in the prior proceeding. *Howe v. Vaughan,* 913 F.2d 1138, 1145 (5th Cir.1990).[4]

■ The first and second prongs are clearly satisfied. As to the third prong, an order confirming a plan of reorganization is a final judgment on the merits which may have res judicata effect. *Eubanks,* 977 F.2d at 170; *Sanders Confectionery Prods. v. Heller Fin.,* 973 F.2d 474, 480 (6th Cir.1992); *Miller v. Meinhard–Commercial Corp.,* 462 F.2d 358, 360 (5th Cir.1972).

■ The fourth prong involves an inquiry into whether there is an "identity of claims" in the two actions. The Fifth Circuit applies the inclusive "transactional" test. "Under this approach, the critical issue is not the relief requested or the theory asserted but whether plaintiff bases the two actions on the same nucleus of operative facts. The rule is that res judicata "bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication, ... not merely those that were adjudicated." *Howe,* 913 F.2d at 1144 (quoting *Nilsen v. City of Moss Point,* 701 F.2d 556, 560 (5th Cir.1983) (en banc)) (footnote omitted).

**3.** Harvey R. Miller et al., *Formulation and Confirmation of Chapter 11 Plans Under the Bankruptcy Code,* in Real Estate Workouts And Bankruptcies (PLI Real Estate Law & Practice Course Handbook Series No. N4–4574, 1993); *see also In re Constructors of Florida, Inc.,* 349 F.2d 595, 599 (5th Cir.1965).

11 U.S.C. § 1141(a) reads, in pertinent part: [T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equi-

ty security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

**4.** *Compare Bernstein v. Donaldson,* 184 B.R. 694, 705 (W.D.Pa.1995) ("[C]reditors could not have sued defendants for breach of fiduciary duty until after plan confirmation. It was not until long after debtor's plan was confirmed and defendants diverted debtor's business opportunities ... that a wrong had been done, a duty breached, and an injury inflicted upon debtor's creditors.").

To illustrate, in *Sure–Snap Corporation v. State Street Bank and Trust Co.* and *Eubanks,* the Second and Fifth Circuits, respectively, held that post-confirmation lender liability actions were barred by the doctrine of res judicata because the plaintiffs in those cases were thoroughly familiar with the operative factual predicates to the later actions at the time of bankruptcy proceedings. *Eubanks,* 977 F.2d at 172 ("[A]ll of the Eubankses' claims in this lender liability action are based on the same transaction that gave rise, in part, to the terms of the Plan, and the order confirming the Plan was based, in part, on the transaction at the core of the instant action.") (footnotes omitted); *Sure–Snap Corp. v. State St. Bank & Trust Co.,* 948 F.2d 869, 875 (2nd Cir.1991) ("Th[e] same post-lending conduct[ ] which Sure–Snap says tacitly influenced the disposition of the creditors' claims during the bankruptcy proceeding[ ] makes up the subject of appellants' claims for intentional infliction of emotional distress, tortious interference with business relationship, etc."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 n. 5 (3d Cir.1988) (dicta); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984); *Bank of Lafayette v. Baudoin,* 981 F.2d 736, 744 (5th Cir.1993) (chapter 7 context).

According to testimony at the October 23, 1995 hearing, the issue of which party or third person would market the properties was an important point raised during the reorganization negotiations, and the issue was addressed in the confirmed reorganization plan (whether the issue was highly contested is unresolved). Consistent with both *Sure–Snap* and *Eubanks,* plaintiff in the case *sub judice* had knowledge of all facts consti-

tuting the alleged tie at the time of plan confirmation. For these reasons, the claim identity prong is satisfied.

▮▮▮ The final inquiry, then, is whether plaintiff's current claim could have been brought in the earlier bankruptcy proceeding. The first matter to be noted is that the absence of pre-confirmation adversary proceedings does not preclude later application of the doctrine of res judicata. *Eubanks,* 977 F.2d at 174; *Sure–Snap,* 948 F.2d at 874. The presence of adversary proceedings is nevertheless one factor that would weigh in favor of the application of res judicata. Other factors include the amount of time intervening between plan confirmation and initiation of the non-bankruptcy lawsuit and the "nexus between the plan and the claim being asserted." *Howe,* 913 F.2d at 1146 n. 28.

The intervening period of two years and eight months between confirmation of the reorganization plan and filing of the instant lawsuit is not especially contraindicative of res judicata. All indications are that the issue of which party or third person would market the properties was at least raised—if not hotly contested—during the reorganization negotiations, and the issue was addressed in the confirmed reorganization plan. Indeed, a tying claim generally becomes cognizable at the time the tie occurs or is attempted.[5] For example, a plaintiff may seek injunctive relief under both the Bank Holding Company Act and the Thrift Institutions Restructuring Act before significant harm results from an act of tying.[6] A plaintiff may also seek damages for harm suffered as a result of a tie but prior to the onset of the most debilitating repercussions of that tie.[7]

5. For tying actions premised on attempts, see generally *Integon Life Ins. Corp. v. Browning,* 989 F.2d 1143 (11th Cir.1993); *Amerifirst Properties, Inc. v. FDIC,* 880 F.2d 821 (5th Cir.1989); *Swerdloff v. Miami Nat'l Bank,* 584 F.2d 54 (5th Cir.1978); *Rayman v. American Fed. Sav. & Loan Ass'n,* 866 F.Supp. 1252 (D.Neb.1994).

6. The Senate Report accompanying the Bank Holding Company Amendments Act of 1970 says of § 1972, "Private parties are given the right to sue for injunctive relief as well as treble damages when they have sustained damages, or are threatened by loss or damage, by reason of a violation of this section's prohibitions." S.Rep.

No. 1084, 91st cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 5519. The Senate Report accompanying the Garn–St. Germain Depository Institutions Act of 1982 says of § 1464(q), "Private parties may enforce this subsection by obtaining injunctive relief for the threat of loss or treble damages for actual damages sustained by virtue of a violation of this subsection." S.Rep. No. 536, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 3054.

7. *Tri–Crown, Inc. v. American Fed. Sav. & Loan Ass'n,* 908 F.2d 578 (10th Cir.1990), involved an attempt by a savings and loan association to compel a borrower to assume certain nonper-

Plaintiff here simply waited until the most damaging effects of the arrangement manifested themselves to sue on a tying theory.

As to the final factor mentioned in the *Howe* footnote, there is an extremely strong factual nexus between the challenged plan provision and the claim being asserted. The tying claim, unlike the breach of contract claim, does not turn on defendant's skill in performing a good faith real estate marketing services, but instead turns on the simple fact that defendant was to undertake that duty under the plan.

In *Latham v. Wells Fargo Bank*, 896 F.2d 979 (5th Cir.1990), the court announced that in some cases a prior bankruptcy proceeding does not have a res judicata effect on tying claims. However, later dicta from the Fifth Circuit limit *Latham* to its specific facts. *Latham* involved lender liability claims brought by an individual who was the sole owner of several corporations. The *corporations*, which were co-borrowers with the individual plaintiff, had several years earlier taken part in bankruptcy proceedings and settled their claims against the banks. The Fifth Circuit, noting the limited jurisdiction of a bankruptcy court, held that plaintiff's *individual* lender liability claims would not have presented core proceedings in the corporations' reorganization proceedings; therefore, the earlier bankruptcy order did not have res judicata effect on plaintiff. As presently understood, *Latham* did not announce a general rule that claims must be core claims in order to trigger res judicata. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir.1995); *Bank of Lafayette v. Baudoin (In re Baudoin)*, 981 F.2d 736, 741 n. 10 (5th Cir.1993).

Plaintiff never listed the potential tying claim on a schedule of assets, set it forth in a disclosure statement, or brought it to the attention of the bankruptcy court at any time. *See Eubanks*, 977 F.2d at 174; *see also Mickey's Enters. v. Saturday Sales, Inc. (In re Mickey's Enters.)*, 165 B.R. 188, 193 (Bankr.W.D.Tex.1994); 11 U.S.C. § 521(1) ("The debtor shall—(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs"); 11 U.S.C. § 1125(b) (debtor must file "a written disclosure statement approved . . . by the court as containing adequate information"). The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action. "[T]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.)*, 183 B.R. 812 n. 17 (Bankr.N.D.Ill.1995). Any claim with potential must be disclosed, even if it is "contingent, dependent, or conditional." *Westland Oil Development Corp. v. MCorp. Management Solutions, Inc.*, 157 B.R. 100, 103 (S.D.Tex.1993). Plaintiff was under a duty to disclose the possibility of its assertion of a tying claim, inasmuch as the facts underlying that claim—i.e., the arrangement for resale of the properties—were known to plaintiff at the time of plan confirmation.

Plaintiff, then, not only could have dealt with the tying issue at the bankruptcy stage, but was required to.[8] Therefore, the four

---

forming loans as a precondition to advancing construction loan funds. Upon refusal by the borrower, the savings and loan association allegedly made additional demands for collateral which it knew plaintiffs could not meet. Plaintiffs' complaint, filed prior to default on the project for which they had sought the financing, read, "By refusing to advance construction funds to Plaintiffs unless other non-performing loans of American Federal [the savings and loan] were assumed by Ventimiglia and other of his partners, and knowing plaintiffs have no other financing available, American Federal *is forcing*

Tri–Crown to default upon their Joint Venture Agreement." *Id.* at 581 (emphasis added).

8. This is not to suggest that in the ordinary tying case, where there is no prior court order confirming a plan of bankruptcy, a party cannot seek under a tying theory damages that are more typically sought under various lender liability theories such as breach of contract and breach of fiduciary duty. *See, e.g., Costner v. Blount Nat'l Bank*, 578 F.2d 1192 (6th Cir.1978). All that is suggested here is that a party to a bankruptcy proceeding may not seek damages for an alleged

prongs having been met, and plaintiff is barred from asserting tying claims at this time.

## B. Judicial Estoppel

 The doctrine of judicial estoppel looks to the relationship between a litigant and the judicial system. Judicial estoppel is "an equitable principle which generally operates to preclude a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation." *USLIFE Corp. v. U.S. Life Ins. Co.*, 560 F.Supp. 1302, 1304 (N.D.Tex.1983). The doctrine aims to prevent litigants from playing fast and loose with the courts by "deliberately changing positions based upon the exigencies of the moment." *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir.1996).

 The doctrine of judicial estoppel applies in the bankruptcy context, where its principal purpose is to protect the integrity of the bankruptcy process and to promote finality of confirmed reorganization orders. *Oneida*, 848 F.2d at 417, 419. The doctrine is often applied to ensure strict adherence with common law and statutory concepts of complete and candid disclosure. *See, e.g.*, 11 U.S.C. §§ 521(1), 1125(b); *Freedom Ford, Inc. v. Sun Bank & Trust Co. (In re Freedom Ford, Inc.)*, 140 B.R. 585 (Bankr. M.D.Fla.1992); *Louden v. Federal Land Bank (In re Louden)*, 106 B.R. 109 (Bankr. E.D.Ky.1989); *Hoffman v. First Nat'l Bank*

*(In re Hoffman)*, 99 B.R. 929 (Bankr. N.D.Iowa 1989).

As noted, parties in a bankruptcy proceeding are bound to disclose any litigation which has the potential of arising in a non-bankruptcy context. Numerous courts preclude post-confirmation assertions of claims by parties to bankruptcy proceedings when those parties either knew at the time of confirmation that non-bankruptcy litigation was likely or knew of the facts giving rise to the later assertion but failed to make appropriate disclosure. In some cases, courts rest on the doctrine of judicial estoppel.[9] In other cases, broad, nondelineated concepts of "estoppel" are applied.[10]

Judicial estoppel comes into play under these circumstances. According to the complaint and the argument of counsel before the magistrate judge at the October 23 hearing, the document was jointly drafted by the parties and voluntarily submitted to the bankruptcy court for confirmation. In other words, this plan was not judicially crafted and thrust upon the parties by order of the bankruptcy court. The parties, therefore, were fully aware of the terms of the plan and were, by all ostensible representations, agreeable thereto.

Plaintiff was all the while aware of each fact underlying the tying claim which would later be asserted. Yet plaintiff failed to disclose the possibility of litigation, despite the statutory and common-law mandates for such disclosure. To promote the finality of con-

---

tying provision contained within a bankruptcy reorganization plan it has submitted for court approval after the bankruptcy court enters its order confirming that plan unless that party first objected to that term or disclosed the possibility of litigation resulting from the inclusion of that term.

**9.** *See, e.g., Oneida*, 848 F.2d at 419 (debtor's failure to disclose possible claim against bank for breach of loan agreement "worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect"); *Pako Corp. v. Citytrust*, 109 B.R. 368, 373, 376 (D.Minn.1989) (disclosure of potential claims required by Bankruptcy Code is essential to goals of finality between the parties and notice to other creditors who vote to approve the reorganization plan; when debtor was aware prior to filing of bankruptcy petition of potential claim

against creditor but failed to make disclosure, application of judicial estoppel necessary to prevent debtor from playing "fast and loose" with court and to protect the integrity of the judicial process; debtor had acquired no new information post-confirmation other than the purported discovery of a legal basis for the lawsuit).

**10.** *See, e.g., Skulsky v. Nyack Autopartstores Holding Co. (In re Nyack Autopartstores Holding Co.)*, 98 B.R. 659 (Bankr.S.D.N.Y.1989) (creditor is deemed to have ratified debtor's acts and is "estopped" from pursuing cause of action alleging that plan confirmation was procured by fraudulent, ultra vires acts when plaintiff did not object to the filing of a bankruptcy petition and participated in the proceedings; plaintiff should have moved to dismiss the petition prior to confirmation or appealed the order of confirmation to preserve claims).

firmed reorganization plans, plaintiff's tying claims will be barred by the doctrine of judicial estoppel.

### C. Waiver by Written Settlement Agreement

■ Alternatively, defendant's motion to dismiss will be granted on the tying claim for the reason that plaintiff waived its right to assert violations of the anti-tying statute by agreeing to and signing the written reorganization agreement. See *Gustin v. FDIC*, 835 F.Supp. 503 (W.D.Mo.1993), *supplemented*, 843 F.Supp. 536 (W.D.Mo.1993).

Although the factual scenario in *Gustin* differs from the scenario in the case *sub judice*, the legal principles are parallel. In *Gustin*, plaintiff signed numerous promissory notes held by Merchants Bank. At some point Gustin discontinued paying on the notes, and a settlement agreement and restated promissory note were eventually hammered out after some wrangling. The settlement agreement included the following provision: "Waiver. Gustin hereby waives, discharges and releases forever any and all existing claims, defenses and rights of setoff that he may have against the Bank or which might affect the enforceability by the Bank of its rights and remedies under any of the Loan Documents." *Id.* at 506. Merchants Bank was later declared insolvent, and the restated note ultimately came into the possession of Boatmen's Bank. Gustin sued Boatmen's Bank claiming, *inter alia*, a violation of 12 U.S.C. § 1972.

The court held that federal law was no bar to waiver of a claim under the tying statutes and concluded that "as a matter of public policy, a private cause of action under the anti-tying statute like any other cause of action for damages, may be compromised and settled." *Id.* at 508. The court held that the waiver was not a product of duress because plaintiff was an experienced businessman, the drafting of the agreement was not rushed, the advice and aid counsel were sought in drafting the document, and plaintiff understood the nature of the document he was signing. *Id.* Therefore, the tying claims were dismissed on defendant's motion for summary judgment.

The First Amended Plan of Reorganization in the instant case contains the following release: "The provisions of this Plan, once confirmed, shall bind the Debtor and all creditors and their respective administrators, successors, or assigns, whether or not such creditors accept the Plan." Plaintiff's First Amended Original Complaint, Exhibit A, at 12 ("Youngblood Group's First Amended Plan of Reorganization"). The arrangement for reselling the properties which is now claimed to be an unlawful tie was a prominent provision of the plan. Under these circumstances, there has been "a voluntary and intentional relinquishing of a known right, or intentional conduct inconsistent with the claiming of the right." *Diaz v. Texas Health Enters. Inc.*, 822 F.Supp. 1258, 1262 (W.D.Tex.1993) (citing *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396 (Tex.1967)). Nor is there any hint that duress existed within the meaning of Texas law. *See, e.g., Griffith v. Geffen & Jacobsen, P.C.*, 693 S.W.2d 724 (Tex. App.—Dallas 1985); *Tower Contracting, Inc. v. Burden Bros., Inc.* 482 S.W.2d 330 (Tex. App.—Dallas 1972). Youngblood Group was a sophisticated business entity engaged in real estate development projects; the reorganization agreement was drafted over a period of time; each side was represented by counsel; the parties presumably understood the terms of the agreement; and no illegal action was imminently threatened. Because the parties mutually drafted the reorganization agreement, voluntarily entered into it with the contemplation that it would be jointly binding, and received the approbation of the bankruptcy court, plaintiff may not now assert a claim for damages premised on a violation of 12 U.S.C. § 1464(q)(1).

### D. Conclusion

For these reasons, defendant's motion to dismiss is granted with respect to plaintiff's claim under 12 U.S.C. § 1464(a)(1).

### VII. Declination of Supplemental Jurisdiction

■ This court has jurisdiction over plaintiff's state law Deceptive Trade Practices Act and breach of contract claims by virtue of 28 U.S.C. § 1367(a). This section

grants a federal district court supplemental jurisdiction over state law claims that form part of the same case or controversy over which the court already has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. However, the exercise of supplemental jurisdiction is discretionary, not mandatory.

■■■ The determination whether to exercise jurisdiction over a state law claim in a particular case is not subject to any hard and fast rules. Rather, determinations must be made on a case-by-case basis, keeping in mind and balancing such considerations as judicial economy, convenience, fairness, and comity with state courts. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349–50, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).[11] The final decision whether to exercise supplemental jurisdiction is made in the trial court's discretion. *Burns–Toole v. Byrne,* 11 F.3d 1270, 1276, (5th Cir.) *cert. denied,* — U.S. ——, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994).

■■■ In addition to the above general common law guidelines, 28 U.S.C. § 1367(c) enumerates four specific occasions when a court may decline to exercise its supplemental jurisdiction, including: when the state claims raise novel or complex issues of state law; when the state law claims substantially predominate over the claim over which the district court has original jurisdiction; and when the district court has dismissed all claims over which it had original jurisdiction.[12] 28 U.S.C. § 1367(c) (the fourth category is an amorphous catch-all category). All three of the listed categories have been triggered by the current posture of the case.

## A. Novel or Complex Areas of Law

"Needless decisions of state law [by federal courts] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). At this point, there is no indication plaintiff's breach

of contract claim will stray very far from the standard breach of contract action. On the other hand, it is likely that plaintiff's DTPA claim will involve complex issues of waiver as well as the perennially thorny issues of whether Youngblood fit within the definition of "consumer" and whether there was a purchase of "services."

As to the matter of waivers, for example, waivers of protections afforded under the Deceptive Trade Practices–Consumer Protection Act are generally against public policy, and only narrow categories of waiver are recognized. TEX.BUS. & COM.CODE ANN. § 17.42 (Vernon Supp.1996). Measurement of the parties' adherence to specific waiver requirements laid out in the Business and Commerce Code will be necessary. Even more complex and unsettled issues of state law are implicated by the substantive provisions of the waiver portion of the reorganization agreement. Specifically, the effectiveness of the waiver may necessitate a survey of the degree of specificity Texas courts have required in waiver clauses regarding the *particular harm* about which plaintiffs sue. *Cf. Rickey v. Houston Health Club, Inc.,* 863 S.W.2d 148 (Ct.App.—Texarkana 1993). This is an area in which caselaw is particularly sparse. The complex and unsettled nature of the DTPA claim counsels toward a rejection of jurisdiction by this court over this claim. *Cf. Moor v. County of Alameda,* 411 U.S. 693, 716, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973). As a consequence, jurisdiction over the breach of contract claim should be rejected as well in the interest of judicial economy.

## B. State Law Claims Substantially Predominate and Sole Claim Over Which the District Court Enjoyed Original Jurisdiction Has Been Dismissed

As one commentator has noted, "[A] state dog cannot wag a federal tail and remain in federal court." Patrick D. Murphy, *A Federal Practitioner's Guide to Supplemental Jurisdiction Under 28 U.S.C. § 1367,* 78 MARQ.

---

**11.** 28 U.S.C. § 1367 was part of the Judicial Improvements Act of 1990, which codified the common law doctrines of "pendent" and "ancillary" jurisdiction. *Carnegie–Mellon University v. Cohill* therefore speaks in terms of "pendent" jurisdiction.

**12.** *See Parker & Parsley Petroleum v. Dresser Indus.,* 972 F.2d 580 (5th Cir.1992) (Fifth Circuit concludes, after weighing the various factors, that it was an abuse of discretion for the district court to retain jurisdiction over state law claims after it had dismissed the federal claims).

L.Rev. 973, 1024 (1995). Even prior to dismissal of the tying claim, this case was first and foremost about a breach of contract. The tying claim was most likely included due to its favorable damages provisions. Now that that sole federal claim has been dismissed, there is an even stronger argument for declining to exercise supplemental jurisdiction. *See Parker & Parsley Petroleum,* 972 F.2d at 585 ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

## C. Conclusion

For these reasons, the court will decline to exercise supplemental jurisdiction over plaintiff's DTPA and breach of contract claims. Dismissal of these two claims is without prejudice to refiling in state court. The state statute of limitations for filing these claims will be deemed to have been tolled between the date of filing in federal court and the date of refiling in state court, provided refiling is accomplished within sixty days of federal court dismissal. Tex.Civ.Prac. & Rem. Code Ann. § 16.064 (Vernon 1986); *Vale v. Ryan,* 809 S.W.2d 324 (Tex.App.—Austin 1991, no writ).

## VIII. Conclusion

Plaintiff's and defendant's objections are **OVERRULED** and the report of the magistrate judge is accordingly **ADOPTED.** Plaintiff's claim under 12 U.S.C. § 1464(q)(1) is **DISMISSED** with prejudice. Plaintiff's DTPA and breach of contract claims are **DISMISSED** without prejudice to reassertion in a state court forum.

*REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)*

HINES, United States Magistrate Judge.

Plaintiff asserts three causes of action. First, plaintiff sues under Texas common law

for breach of contract. Second, plaintiff asserts a federal statutory tort claim based upon anti-tying provisions of the Thrift Institutions Restructuring Act.[1] Third, plaintiff asserts another statutory tort claim under the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA).[2]

Defendant moves to dismiss both statutory tort claims for failure to state a claim upon which relief may be granted.[3] The motion was referred to the undersigned United States magistrate judge for report and recommendation by Hon. Thad Heartfield, United States District Judge, pursuant to order dated August 25, 1995.

## I. Nature of Suit

This dispute arises from an agreed, court-approved bankruptcy Chapter 11 plan of reorganization.

Plaintiff ("Youngblood"), borrowed in excess of one million dollars from the defendant Lufkin Federal Savings and Loan ("Lufkin"). The loans were secured by various parcels of real property Youngblood intended to develop.

Youngblood subsequently filed for Chapter 11 bankruptcy.[4] Youngblood and defendant ultimately agreed upon and jointly presented for court approval a reorganization plan. The bankruptcy court confirmed the plan on October 7, 1992.

The reorganization plan commanded plaintiff to convey to defendant fee simple title to the land. In turn, the plan required defendant to "maintain, market, develop and sell the Real Estate in a commercially reasonable manner."[5] Real estate remaining after Youngblood's debt to Lufkin had been satisfied and administrative fees paid was to be transferred to Youngblood.

1. 12 U.S.C. § 1464(q)(1).

2. Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987).

3. Fed.R.Civ.P. 12(b)(6). Defendant's alternate motion pursuant to Rule 12(e) for a more definite statement was denied by order of the undersigned dated September 21, 1995.

4. *In re Youngblood Group,* No. 91–90609–S (Bankr.E.D.Tex. Oct. 7, 1992).

5. Plaintiff's Original Complaint, Exhibit A, at 6 ("Youngblood Group's First Amended Plan of Reorganization"). The parcels were contiguous, and the plan further provided that "sale of any one part of the Real Estate shall not result in denying another part commercially reasonable access and visibility." *Id.*

Ultimately, certain parcels were sold in satisfaction of Youngblood's debt to defendant. The sales did not generate income that Youngblood expected.

## A. Plaintiff's Contentions

Youngblood alleges Lufkin sold the land in a manner not conforming to the reorganization plan. Specifically, Youngblood alleges that the properties were "dumped" at a price sufficient to cover the loans, but not approaching fair market value. Thus, Youngblood contends that Lufkin breached its contract.[6]

Next, Youngblood asserts the reorganization plan was structured in two stages. The first stage was transfer of title to Lufkin. The second stage was marketing of the properties. The latter provision allegedly violates federal anti-tying provisions of the Thrift Institutions Restructuring Act. Specifically, Youngblood asserts Lufkin negotiated for both transfer of the properties and the right to market them. As to the right to market, Youngblood alleges that Lufkin conditioned its agreement to the plan on having the right to provide its own real estate marketing services. The additional right to provide internal marketing services is alleged to be an unlawful tie because Lufkin required Youngblood to obtain an additional service as a condition of Lufkin's forbearance on collection of its debt.[7]

Finally, Youngblood alleges Lufkin made various specific representations concerning the manner in which it planned to market the properties. These include representations that Lufkin would market and sell the property in a commercially reasonable manner and that no portion of the real estate would be sold so as to detract from the access or visibility of any other portion. Youngblood asserts that these representations motivated Youngblood to agree to Lufkin's demand to market the properties through its real estate marketing division. Youngblood contends that Lufkin's failure to market the properties in conformity with its representations constituted both a breach of contract and a deceptive trade practice actionable under Texas law.

## B. Defendant's Contentions

Lufkin asserts a Rule 12(b)(6) defense (failure to state a claim) as to Youngblood's tying and DTPA causes of action. The Rule 12(b)(6) defense as it relates to the tying claim is addressed in Section IV., infra.

On the merits, Lufkin denies it breached the contract to market the properties in a commercially reasonable manner. As to tying, Lufkin denies that it negotiated for or required an affirmative concession from Youngblood to subscribe to Lufkin's real estate marketing services. Lufkin asserts that its right to market the properties simply attended its status as title holder. Finally, Lufkin contends Youngblood is not a consumer within the meaning of the Texas DTPA, and denies that it marketed the properties in a manner not conforming with its representations.

## II. Proceedings

The tying claim originally was asserted under the federal Bank Holding Company Act.[8] On September 18, 1995, the court requested the parties to stipulate the institutional status of defendant, Lufkin Federal Savings and Loan Association. On September 22, 1995, the parties stipulated that Lufkin Federal Savings and Loan Association is a member of the Savings Association Insurance Fund.[9] With that stipulation, it became clear that suit had been brought under the wrong act.[10]

---

6. Violation of the terms of a confirmed Chapter 11 reorganization plan may lead to a state law claim of breach of contract. *See, e.g., Paul v. Monts,* 906 F.2d 1468, 1475 (10th Cir.1990).

7. Forbearance may constitute an extension of credit within the meaning of the federal antitying statutes. *See, e.g., Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542 (S.D.N.Y.1985).

8. 12 U.S.C. § 1972(1).

9. Uncontested Stipulation as to Certain Facts, at 1.

10. The term "bank" as used in 12 U.S.C. § 1972 is defined in 12 U.S.C. § 1971. Specifically, "bank" is defined to "have the meaning ascribed to [that] term[ ] in section 1841 of this title." 12 U.S.C. § 1971. Section 1841 states that "bank" does not include "any building and loan association, homestead association, or cooperative bank if such association or cooperative bank is a mem-

The court thereafter entered an order stating that the September 22, 1995 "Uncontested Stipulation as to Certain Facts" would be considered for purposes of ruling on the pending dispositive motion. That order notified the parties that the motion would be converted in accordance with Rule 12(b) from a motion to dismiss to a motion for summary judgment pursuant to Rule 56(c) and invited the parties to submit summary judgment materials.[11]

Neither side opted prior to the hearing to submit summary judgment materials. However, leave was granted to amend the complaint to bring the tying claim under a section of the Thrift Institutions Restructuring Act, which contains prohibitions on tying similar to those in the Bank Holding Company Act. *Compare* 12 U.S.C. § 1972(1) [12] *with* 12 U.S.C. § 1464(q)(1).[13] The parties' earlier stipulation is, therefore, superfluous. At the hearing, defendant essentially reurged its motion to dismiss with respect to the amended complaint, and the court may now address the motion as originally framed: a motion to dismiss the tying and DTPA claims.[14]

---

ber of the Savings Association Insurance Fund." 12 U.S.C. § 1841(c)(2)(B), (j)(2). *See Bruce v. First Fed. Savings & Loan Ass'n,* 837 F.2d 712, 716 (5th Cir.1988) ("With the adoption of [the Thrift Institutions Restructuring Act], the antitying provision of [the Bank Holding Company Act] no longer applied to savings and loan associations.").

11. *Powell v. United States,* 849 F.2d 1576 (5th Cir.1988); *Hickey v. Arkla Indus.,* 615 F.2d 239 (5th Cir.1980). The announced conversion of the motion was perhaps unnecessary because the sole basis for the conversion was the court's intention to consider the parties' stipulation of defendant's institutional status. That status is a matter of public record, a matter about which judicial notice could be taken. This type of fact is appropriately considered on a motion to dismiss pursuant to Rule 12(b). *Louisiana ex rel. Guste v. United States,* 656 F.Supp. 1310, 1314 n. 6 (W.D.La.1986).

12. A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing on the condition or requirement—

(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;
(B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;
(C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;
(D) that the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; or
(E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of credit.

The Board may by regulation or order permit such exceptions to the foregoing prohibition as it considers will not be contrary to the purposes of this chapter.

12 U.S.C. § 1972(1) (1988).

13. A savings association may not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain additional credit, property, or service from such savings association, or from any service corporation or affiliate of such association, other than a loan, discount, deposit, or trust service;
(B) that the customer provide additional credit, property, or service to such association, or to any service corporation or affiliate of such association, other than those related to and usually provided in connection with a similar loan, discount, deposit, or trust service; and
(C) that the customer shall not obtain some other credit, property, or service from a competitor of such association, or from a competitor of any service corporation or affiliate of such association, other than a condition or requirement that such association shall reasonably impose in connection with credit transactions to assure the soundness of credit.

12 U.S.C. § 1464(q)(1).

14. All of the materials considered for purposes of the motion to dismiss are appropriate materials for a motion to dismiss. First and foremost, the court considered the confirmed reorganization plan, which was attached to the complaint as an exhibit. Exhibits attached to complaints are appropriate materials for court consideration of a motion to dismiss, particularly when they concern a matter of public record. *Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 n. 9 (9th

### III. The Motion

Lufkin contends no tying claim is stated because (1) there was no allegation that any "additional service" was required of Youngblood in connection with the bankruptcy reorganization; (2) no prima facie showing was made that the reorganization arrangement was "unusual"; and (3) no showing was made that Lufkin sought to stifle competition in negotiating terms of the reorganization plan. Finally, Lufkin asserts no DTPA claim is stated because plaintiff does not meet the definition of "consumer" in that Act.

Youngblood responded by enumerating the elements of a tying cause of action as articulated by the Fifth Circuit, and arguing that each element is alleged distinctly in the complaint. Youngblood also argues that it fits the definition of "consumer" for purposes of the DTPA.

### IV. Analysis

The Thrift Institutions Restructuring Act contemplates in 12 U.S.C. § 1464(q) that a private cause of action may be brought[15] in three distinct circumstances: when a thrift service is provided by a savings and loan association on the condition: (1) that the customer obtain additional credit, property, or services from that institution; (2) that the customer provide additional credit, property, or service to such association; or (3) that the customer not obtain some other credit, property, or service from a competitor of such association. 12 U.S.C. § 1464(q)(1)(A, B, C). Plaintiff's amended complaint asserts a claim under § 1464(q)(1) without specifying which subsection plaintiff considers applicable.[16]

### A. Legal Standards Governing Motion

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint "fails to state a claim upon which relief can be granted." Dismissal should be ordered only if plaintiff can prove no set of facts that will entitle him or her to the relief sought. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). When a defendant moves to dismiss under this rule, the court must accept the factual allegations of the complaint as true and view them in the light most favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

A complaint is subject to dismissal when there is no legal theory which entitles plaintiff to relief, *Walker v. South Central Bell Tel. Co.,* 904 F.2d 275, 277 (5th Cir.1990), or when the pleadings are so badly stated that they fail to put the defendant on notice of the circumstances giving rise to the claim or fail to set out at least inferentially the existence of the elements necessary to support the claim, *id.; cf. Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). The benchmark as to specificity is embodied in the generous notice pleading standard of Federal Rule of Civil Procedure 8(a)(2): a "short and plain statement of the claim showing that the pleader is entitled to relief."

Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1987); *Nix v. Fulton Lodge No. 2, Int'l Ass'n of Machinists,* 452 F.2d 794, 798 (5th Cir.1971), *cert. denied,* 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972); *Sheppard v. Texas Dep't of Transp.,* 158 F.R.D. 592 (E.D.Tex.1994); *Louisiana ex rel. Guste v. United States,* 656 F.Supp. 1310, 1314 n. 6 (W.D.La. 1986). Both the argument of counsel at the October 23 hearing and the briefs submitted have also been considered. This is proper where, as here, counsel did not depart from the four corners of the complaint. *Sardo v. McGrath,* 196 F.2d 20, 23 (D.C.Cir.1952); *Louisiana ex rel. Guste,* 656 F.Supp. at 1314 n. 6; *Judge v. Johnston Warren Lines, Ltd.,* 205 F.Supp. 700, 702 (D.Mass.1962); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1364, at 480 n. 39 (1991); *id.* § 1366, at 500–01.

15. *See, e.g., Bruce v. First Fed. Sav. & Loan Ass'n,* 837 F.2d 712 (5th Cir.1988); *Dendinger v. First Nat'l Corp.,* No. A.87–4611, 1989 WL 85070 (E.D.La. July 27, 1989).

16. In construing anti-tying provisions applicable to savings and loan associations under 12 U.S.C. § 1464(q)(1), it is helpful to consult jurisprudence concerning 12 U.S.C. § 1972(1). *See, e.g., Integon Life Ins. Corp. v. Browning,* 989 F.2d 1143 (11th Cir.1993); *Sundance Land Corp. v. Community First Fed. Sav. & Loan Ass'n,* 840 F.2d 653 (9th Cir.1988); *Flags I, Inc. v. Boston Five Cents Sav. Bank,* 831 F.Supp. 928 (D.N.H. 1993). Therefore, in the remainder of this report cases from the § 1972 context will occasionally be cited.

Thus, "[a] complaint need not outline all the elements of a claim." *Reed v. Johnson*, No. 93–1652, 1994 WL 710543, at *1 (E.D.La. Dec. 19, 1994). "It must be possible, however, for an inference to be drawn that the elements exist." *Id.*

## B. Tying Claims

### 1. Grounds Argued by Defendant

#### a. Additional Service

Although defendant argues that the right to market the properties was a right it enjoyed simply by virtue of its status as titleholder, the bankruptcy reorganization plan contains several provisions which arguably support plaintiff's assertion that the right to market the properties was separately negotiated and its ultimate conclusion that an additional service was required by defendant. One term of the plan reads:

> In consideration for the transfer of the real estate, Lufkin Federal's claim shall be deemed satisfied in full and *Lufkin Federal assumes the following obligations, responsibilities, and duties: 1. To maintain, market, develop and sell the Real estate in a commercially reasonable manner.* . . .

Plaintiff's Original Complaint, Exhibit A, at 6 ("Youngblood Group's First Amended Plan of Reorganization") (emphasis added). Another term of the plan which supports plaintiff's assertion that the right to market the properties was a separately considered matter and not simply an inherent benefit enjoyed by defendant after transfer of title reads: "Lufkin Federal may place the Real Estate on the market for sale at any time following the Effective Date." Plaintiff's Original Complaint, Exhibit A, at 10 ("Youngblood Group's First Amended Plan of Reorganization"). Given these two provisions, there exists a set of facts under which plaintiff will be entitled to relief.

#### b. Unusualness

Lufkin's motion to dismiss argued as a general proposition that to prevail on a tying claim a plaintiff must show that the challenged practice of the savings and loan association was unusual. Youngblood's brief in response to the motion to dismiss argued that the relevant tie was the requirement that Youngblood "in connection with its loan from defendant, . . . use the real property sales services of defendant." Plaintiff's Brief on Defendant's Various Motions at 5. This allegation falls within the terms of 12 U.S.C. § 1464(q)(1)(A). There is no requirement of unusualness in an action under 12 U.S.C. § 1464(q)(1)(A).[17]

#### c. Anticompetition

While anticompetition may have been in the mind of Congress when 12 U.S.C. § 1464(q)(1)(A) was enacted,[18] the Fifth Cir-

---

**17.** The requirement of unusualness exists in actions founded on 12 U.S.C. § 1464(q)(1)(B), and, to some extent in actions based on 12 U.S.C. § 1464(q)(1)(C). At the hearing, counsel for Youngblood made statements suggesting that plaintiff wishes to proceed under 12 U.S.C. § 1464(q)(1)(B) as well as § 1464(q)(1)(A). The language of the first amended complaint is broad enough to support this assertion, although the complaint does not specifically mention any subsections.

To the extent that Youngblood is proceeding under 12 U.S.C. § 1464(q)(1)(B), the motion to dismiss should be granted, as there is no allegation in the complaint (or which can be inferentially derived therefrom) that plaintiff provided some unusual property, credit, or service to Lufkin in exchange for the cancellation of its indebtedness. It is common for a commercial real estate borrower in default to transfer to the lender title to the real property securing the loan in return for a release of indebtedness; oftentimes the borrower will insist on retaining an equity

interest in the transferred property. John C. Murray, *Deeds in Lieu of Foreclosure: Practical and Legal Considerations*, 26 Real Prop.Prob. & Tr.J. 459 (1991).

As to unusualness, see generally *Flags I, Inc. v. Boston Five Cents Sav. Bank*, 831 F.Supp. 928, 936 (D.N.H.1993) (reviewing case law applying § 1464(q)(1) and concluding that "all of the circuit courts that have construed the traditional banking practice exemption have concluded that the exemption should be construed broadly" in light of the legislative history emphasizing the importance of accommodating legitimate protection of a bank's security).

**18.** The following language from the Senate Report accompanying the bill which included § 1464(q)(1) is revealing:

Under section 331 of the bill, federal thrift institutions are made subject to anti-tying restrictions generally comparable to those applicable to bank holding companies. . . . In sum,

cuit has uniformly read § 1972(1) and § 1464(q)(1) as not requiring an allegation of anti-competitive motive to state a claim. *See* Kevin S. Krejci, Note, *The Requirement of an "Anticompetitive Effect" in the Anti–Tying Provisions of the Bank Holding Company Act and the Thrift Institutions Restructuring Act,* 33 ARIZ.L.REV. 199 (1991); *Amerifirst Properties, Inc. v. FDIC,* 880 F.2d 821 (5th Cir.1989); *Bruce v. First Federal Sav. & Loan Ass'n,* 837 F.2d 712 (5th Cir.1988); *Campbell v. Wells Fargo Bank,* 781 F.2d 440 (5th Cir.), *cert denid,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

### d. Conclusion

Lufkin is not entitled to dismissal of the federal tying claim on any ground asserted.

### 2. Sua Sponte Grounds

The alleged offending provision is part of the bankruptcy court's reorganization plan. The reorganization plan was approved and imposed by the bankruptcy court at the urging of Youngblood and Lufkin. There were no objections and no appeal. The bankruptcy court's judgment is final.

These circumstances raise a question as to whether Youngblood can advance the tying claim. Under circumstances described in the preceding paragraph, doctrines of *res judicata,* judicial estoppel and waiver could restrain it. The parties were advised at the hearing on defendant's motion of the Court's concern, and of the undersigned's intention to address these questions.

It is proper for the Court to raise *sua sponte* defenses such as *res judicata,* estoppel and waiver when the previous action occurred before a court within the same judicial district, all relevant data and legal records are before the court, and judicial economy concerns exist. *See Day v. Moscow,* 955 F.2d 807 (2d Cir.), *cert. denied,* 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); *In re Cassidy,* 892 F.2d 637 (7th

Cir.), *cert. denied,* 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Nagle v. Lee,* 807 F.2d 435 (5th Cir.1987); *American Furniture Co. v. International Accommodations Supply,* 721 F.2d 478 (5th Cir. Unit A Mar. 1981); *Boone v. Kurtz,* 617 F.2d 435 (5th Cir.1980). However, consideration of grounds for dismissal not argued by Lufkin might exceed the scope of the reference.

The district judge originally entered an order referring only Lufkin's motion to dismiss to the undersigned for review, hearing and submission of a written report and recommendation. The district judge subsequently entered a general referral order relating to all other pretrial motions. Neither the original nor the subsequent referral order suggests that the district judge desires the undersigned magistrate judge to handle matters other than those raised by the parties.

Especially since the *sua sponte* grounds might prove dispositive, it is the prerogative of the district judge to whom the case is assigned to raise them. Accordingly, these grounds will not be addressed in the present posture of the case.

### C. Deceptive Trade Practices Claim

Similarly, analysis of Lufkin's motion to dismiss the DTPA claim will be deferred. If the Court elects to consider *sua sponte* grounds for dismissing the federal tying claim and dismisses that action, the Court in its discretion may decline to exercise supplemental jurisdiction over both the breach of contract and DTPA claims. 28 U.S.C. § 1367(c)(3); *Burns–Toole v. Byrne,* 11 F.3d 1270, 1276 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994). Should the court ultimately decline to exercise supplemental jurisdiction, the statute of limitations will be considered tolled between the date of filing in federal court and the

---

this provision is intended by the committee to preclude anti-competitive practices where customers are required to accept or provide another service or product or to refrain from dealing with other parties in order to obtain the product or service that they want from the association.... It is the intention of the com-

mittee to prohibit the linkage of the provision of credit to requirements that the credit applicant establish a relationship with the association's service corporation or with a business being operated within the association....
S.REP. No. 536, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 3054.

date of refiling in state court, provided refiling is accomplished within sixty days of federal court dismissal. TEX.CIV.PRAC. & REM. CODE ANN. § 16.064 (Vernon 1986); *Vale v. Ryan,* 809 S.W.2d 324 (Tex.App.—Austin 1991).

### V. Recommendations

The motion to dismiss plaintiff's cause of action under 12 U.S.C. § 1464(q)(1)(B) should be granted because there is no allegation that plaintiff provided unusual property, credit or service in exchange for cancellation of indebtedness.

The motion to dismiss plaintiff's cause of action under 12 U.S.C. § 1464(q)(1)(A) should be denied because the complaint is sufficient to allege that plaintiff was required to obtain an "additional service" and because there is no requirement to allege "anticompetition."

The motion to dismiss plaintiff's cause of action under TEX.BUS. & COM.CODE ANN. §§ 17.41–.63 should be held in abeyance pending determinations of whether to (a) consider *sua sponte* other grounds for dismissal or (b) exercise supplemental jurisdiction.

### VI. Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–277 (5th Cir.1988).

SIGNED this 4 day of March, 1996.