# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-01386-SCT

*JOURDAN RIVER ESTATES, LLC AND*
*JOURDAN RIVER RESORT AND YACHT CLUB,*
*LLC*

*v.*

*SCOTT M. FAVRE, CINDY FAVRE AND*
*JEFFERSON PARKER*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/22/2017 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | TINA LORRAINE NICHOLSON |
| | GEORGE W. HEALY, IV |
| | ROBERT B. WIYGUL |
| | CLEMENT S. BENVENUTTI |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | GEORGE W. HEALY, IV |
| ATTORNEY FOR APPELLEES: | ROBERT B. WIYGUL |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: DISMISSED AND REMANDED - 09/26/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS AND KING, P.JJ., AND COLEMAN, J.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This appeal is the fourth arising from this dispute.[1] As we noted in *Favre II*,"[t]he

instant case follows a complex factual and procedural history . . . ." *Favre II*, 148 So. 3d at

---

[1]*Favre v. Hancock Cty. Bd. of Supervisors*, 52 So. 3d 463 (Miss. Ct. App. 2011) (*Favre I*); *Favre v. Jourdan River Estates*, 148 So. 3d 361 (Miss. 2014) (*Favre II*); *Jourdan River Estates, LLC v. Favre*, 212 So. 3d 800 (Miss. 2015) (*Favre III*).

363 (¶ 2). From 2007 to 2014, the parties employed significant resources in litigating "the rights of the various parties as to Nicola Road, a county road that allows the various property owners access to Highway 603." *Id.* Jourdan River Estates (JRE) prevailed in that litigation, securing much-needed access to Nicola Road for the purpose of developing its 269-acre tract of land and constructing hundreds of condominiums. *Id.* at 363 (¶ 1).

¶2.     This litigation took its toll, and "the seven year delay has been costly for" JRE and Jourdan River Resort and Yacht Club, LLC (Yacht Club).[2] On December 19, 2011, JRE and Yacht Club sued Scott Favre, Cindy Favre, and Jefferson Parker—neighboring property owners who opposed development—for damages in Hancock County Circuit Court, asserting fifteen different causes of action. All of the causes of action are based on the allegations that the defendants delayed development of the condominium complex.

¶3.     After years of protracted proceedings, the circuit court granted partial summary judgment in favor of the defendants.[3] In its order, the circuit court divided its analysis between JRE and Yacht Club, explaining the reasons summary judgment was appropriate against each plaintiff. Simply put, the circuit court disposed of each cause of action by (1) applying the statute of limitations bar, (2) finding that the plaintiffs lacked standing to bring

---

[2]JRE filed for bankruptcy in 2009. After coming out of bankruptcy, JRE transferred its property to Yacht Club, a new LLC owned and operated by the owners of JRE. The two LLCs collectively sued the defendants for acts and omissions that allegedly occurred during their respective ownerships of the property.

[3]The circuit court granted a partial summary judgment that effectively disposed of almost all of the plaintiffs' claims. The circuit court certified the judgment as final, allowing the plaintiffs to pursue this appeal. *See* Miss. R. Civ. P. 54(b).

the claim, or (3) utilizing the ***Noerr-Pennington***[4] doctrine, which immunizes defendants from tort-based liability for having petitioned the government. The trial court denied the defendants' request to apply judicial estoppel to all of the remaining claims. JRE and Yacht Club appealed the order granting summary judgment, and the defendants cross-appealed regarding the court's application of judicial estoppel.

¶4.     During pendency of the appeal, this Court *sua sponte* requested that the parties address the issue that JRE—a foreign limited liability company—was not in good standing with the Mississippi Secretary of State prior to filing its complaint. The Court finds that the parties have waived the issue.

¶5.      We affirm the circuit court's grant of partial summary judgment in favor of the defendants, but we reverse and remand the court's application of judicial estoppel.

## FACTS AND PROCEDURAL HISTORY[5]

¶6.     JRE, a Louisiana limited liability company, was the owner of the 269-acre tract (the Yacht Club property) near the community of Kiln, Mississippi, located in Hancock County. ***Favre I***, 52 So. 3d at 464 (¶ 1). Jourdan River Resort and Yacht Club, LLC, a Louisiana limited liability company, is the current owner of the Yacht Club property. Cindy Favre owns the tract of land immediately to the west of the Yacht Club property. She and her husband,

---

[4]*See* n.13.

[5]The underlying facts are not in substantial dispute, and the Court summarizes the relevant facts based on the circuit court's findings of fact in its order granting summary judgment and the previous decisions in the ***Favre*** line of cases to simplify a complex history.

Scott Favre, reside on Cindy Favre's property. Jefferson Parker owns and resides on the property immediately to the east of the Yacht Club property.

¶7. In early 2007, JRE filed an application with the Hancock County Planning and Zoning Commission to rezone the Yacht Club property; JRE planned to develop a 472-unit condominium complex and yacht basin. The application was rejected after review by the Hancock County Board of Supervisors, and JRE resubmitted its plans without a zoning request in early 2008. The second proposal was approved by the Hancock County Board of Supervisors, and a conditional use permit was issued. Objecting neighbors filed an appeal in the Hancock County Circuit Court. That court found their objections to be without merit. The Court of Appeals affirmed the circuit court's judgment in favor of JRE. *Favre I*, 52 So. 3d at 467 (¶ 16).

¶8. During that same time period, a dispute arose between the parties over a 340-foot portion of Nicola Road near the north end of that public road. *Favre II*, 148 So. 3d at 363 (¶ 1). The plaintiffs needed full access to Nicola Road to reach their 947-foot private easement, ultimately so that the plaintiffs could build their condominium complex. *Id.* at 363 (¶¶ 1-2). As evidenced by all of the litigation, the defendants did not consider the plaintiffs to be entitled to full access to Nicola Road. *Id.*

¶9. Nicola Road is a public road, accessed from Highway 603. Nicola Road leads from Highway 603 to the Yacht Club property, "also known as the Mentel parcel, passing by and providing access to three parcels." *Id.* at 363 (¶ 2). The three parcels are the properties owned by the defendants, which "were conveyed from Cinque Bambini, an ancestor in title,

4

sometime in 1986." *Id.* A map of all of the properties can be found within paragraph two of *Favre II*. *Id.*

¶10.    The plaintiffs' access to the right-of-way was "complicated by the existence (or lack thereof) of two gates on Nicola Road: the Darwood Point gate . . . and the Heitzmann gate." *Id.* at 364-65 (¶ 4). The plaintiffs' access to Nicola Road also was hindered by actions of the defendants.

¶11.    On September 22, 2008, JRE filed suit in Hancock County Chancery Court for declaratory judgment regarding which portions of Nicola Road are public, as well as identification of easement rights of property owners adjoining the road. *Id.* at 364 (¶ 2).[6] JRE also requested an injunction against the other landowners to require the removal of all gates leading up to the Yacht Club property. *Id.* JRE's complaint also alleged defamation, tortious interference with business relationships, blocking a public road, and malicious conduct.

¶12.    After a preliminary hearing, the chancery court ordered that the suit be transferred to circuit court. To allow the action to remain in chancery court, JRE dismissed all tort and damages claims and filed an amended complaint on October 3, 2008, including only the declaratory judgment and injunction portions of the suit. The Hancock County Chancery Court retained the matter.

---

[6]JRE, Hancock County, and the defendants  disputed, *inter alia*, which portions of Nicola Road were dedicated to the public, the existence and portions of any private right of way, the boundaries of those public and private portions, and what rights to those portions existed amongst the parties and their ancestors in title. *Favre II*, 148 So. 3d. at 364-67 (¶¶ 2-12).

¶13.    The chancery court found in favor of JRE in December 2012, adjudicating that the 340-foot portion of Nicola Road is a public right of way that leads to JRE's private 947-foot easement. *Id.* at 365 (¶ 9). The court also found that Scott Favre had built the Darwood Point gate in 2007 and that both it and the Heitzmann gate had to be removed; the injunction prohibited the parties from erecting any gates in the future. *Id.* at 367 (¶ 13).

¶14.    The chancery court also enjoined the Favres and Parker from harassing or intimidating JRE or its invitees and licensees. *Id.* The injunction mainly was directed toward Scott Favre. *Id.* at 367 (¶ 14). According to JRE, Scott Favre would accost anyone who attempted to access the Yacht Club property via Nicola Road, "threatening to impound their vehicles by shutting and locking the gate." *Id.* "Scott Favre would verbally harass anyone who entered, repeatedly used his rifle to shoot JRE's fence, construction permit, power pole, and a security camera, which he specifically is recorded as saying that 'I shot [the security camera] twenty times with a [.]223 . . . .'" *Id.* The chancery court also applied the injunction against Cindy Favre and Parker because they "indirectly supported [Scott Favre's] actions as they generally knew of them." *Id.*

¶15.    The Favres and Parker appealed the chancery court's judgment, and on October 9, 2014, this Court affirmed the judgment in *Favre II*. *Id.* at 376-77 (¶ 54).

¶16.    While these lawsuits were pending, JRE filed for bankruptcy on September 9, 2009. In the bankruptcy schedules, JRE listed various suits and potential claims under the pending litigation section, but it omitted a potential damages lawsuit as an asset. Emerging from bankruptcy in February 2011, JRE was able to retain its ownership of the Yacht Club

6

property. JRE transferred the property to the newly created entity—Yacht Club—shortly after the close of the bankruptcy case in February 2011. The same owners and operators controlled both JRE and Yacht Club; an owner testified that the decision to transfer to Yacht Club may have concerned avoiding the stigma of bankruptcy.

¶17. After the bankruptcy proceedings were over, JRE and Yacht Club filed a lawsuit in circuit court against the Favres and Parker in December 2011, seeking millions of dollars in damages. The complaint alleged fifteen causes of action,

> including slander of title; slander and/or defamation; trespass; nuisance; tortious interference with use of property; tortious interference with contractual relationships; harassment and intimidation of plaintiffs' agents and intentional infliction of emotional distress upon plaintiffs' agents; assault upon plaintiffs' agents; willful destruction of plaintiffs' property; negligence; gross, willful, and wanton negligence; malicious prosecution; unjust enrichment (inasmuch as defendants' actions are believed to be motivated, in part, by a desire to increase the value of their own property by using improper means to limit the use of plaintiffs' property); false imprisonment; and any other applicable theory of law giving rise to a cause of action.

*Favre III*, 212 So. 3d at 802 (¶ 1).

¶18. In response, the Favres and Parker filed a motion to dismiss for failure to state a claim under Mississippi Rule of Civil Procedure 12(b)(6). *Id.* at 802 (¶ 2). The Circuit Court of Hancock County granted the motion in part and denied it in part, denying or dismissing almost all of the plaintiffs' claims. *Id.* JRE and Yacht Club appealed that order, arguing the defendants' "Rule 12(b)(6) motion should have been converted into a motion for summary judgment, as provided in Rule 56 of the Mississippi Rules of Civil Procedure . . . ." *Id.* at 802 (¶ 3).

7

¶19. In *Favre III*, this Court agreed with JRE and Yacht Club, issuing a very narrow holding:

> [I]n considering the Rule 12(b)(6) motion, the circuit court did a skilled job in addressing and applying Mississippi law to each individual cause of action plead[] by [the p]laintiffs in this case. However, as demonstrated by the Rule 12(b)(6) motion hearing held in this matter, numerous facts were presented to the circuit court that existed outside the pleadings. Accordingly, we find that Defendants' Rule 12(b)(6) motion should have been converted into a motion for summary judgment, as provided by Rule 56.
>
> . . . We reverse the circuit court's grant of Defendants' Rule 12(b)(6) motion and remand the matter for further proceedings consistent with this opinion.

*Id.* at 803 (¶¶ 6-7).

¶20. After remand and further discovery, the defendants moved for summary judgment, raising several of the same arguments they had raised in their Rule 12(b)(6) motion. The circuit court granted partial summary judgment in favor of the defendants on almost all of the claims.

¶21. In the circuit court's Order Regarding Defendants' Motions for Summary Judgment the court noted that "the [c]omplaint does not specifically state which causes are asserted by each [p]laintiff." Since JRE and Yacht Club are two separate entities, each having owned the Yacht Club property during different time periods, the court divided its analysis between the facts and incidents alleged during JRE's ownership of the property (January 2005-February 2011) and Yacht Club's ownership of the property (February 2011-December 19, 2011, the date of the filing of the complaint).[7]

---

[7]The circuit court considered that JRE acquired the property in January 2005 and that Yacht Club acquired the property following JRE's bankruptcy in February 2011.

8

¶22. For its analysis regarding JRE, the circuit court determined either that the statute of limitations had run on all claims by JRE against Cindy Favre and Jefferson Parker or that JRE lacked standing to bring the claim alleged. Some claims by JRE against Scott Favre also were dismissed. But the court did not dismiss all claims against Scott Favre, finding that the claims of trespass, nuisance, unjust enrichment, negligence, and gross, willful, and wanton negligence against him were not barred by the statute of limitations.

¶23. The defendants had argued in their motion for summary judgment that all the claims by JRE should have been dismissed due to judicial estoppel—JRE had not listed the potential damages lawsuit in its bankruptcy schedules; therefore, it should have been precluded from bringing the suit. The court expressly denied that portion of the defendants' summary judgment motion, finding that "the current suit was not included, as it had yet to be filed[;] [t]he [p]laintiffs['] listing of current suits in one section, but failure to repeat in another, is mere inadvertence."

¶24. For its analysis regarding Yacht Club, the circuit court determined that all claims by Yacht Club against all defendants were either barred by the ***Noerr-Pennington*** doctrine or lacked viability.

¶25. In sum, the circuit court dismissed all claims by Yacht Club, dismissed or denied all claims by JRE against Cindy Favre and Jefferson Parker, and dismissed most claims by JRE against Scott Favre, leaving only claims of trespass, nuisance, unjust enrichment, negligence, and gross, willful, and wanton negligence against Scott Favre. The plaintiffs argue that

9

although this is nominally a partial summary judgment, the ruling ends the litigation and is effectively a final judgment because Scott Favre is judgment proof.

¶26. The circuit court certified the judgment as final under Mississippi Rule of Civil Procedure 54(b). On appeal, JRE and Yacht Club raise five issues addressing the trial court's findings:

[1]:    If plaintiffs prove that defendants took [actions that delayed development of the Yacht Club property] with resulting damage to plaintiffs, do plaintiffs have the right to recover damages under any legal theory[?]

[2]:    Have plaintiffs presented sufficient evidence . . . to survive defendants' motions for summary judgment?

[3]:    Is there sufficient evidence of agreement and coordination among the three defendants to support a finding that each defendant is vicariously liable for wrongful actions of other defendants under the laws of conspiracy or agency?

[4]:    Are plaintiffs' claims barred by the statute of limitations?

[5]:    Are plaintiffs' claims barred or limited by state law privilege or under the *Noerr-Pennington* privilege?

¶27. Because the circuit court did not rule on the sufficiency of the evidence as it pertained to each claim when it granted summary judgment, this Court likewise does not address issues one and two. As the issues involve the statute of limitations, standing to bring a claim, and the *Noerr-Pennington* doctrine, all arguments relate to one central issue raised by the plaintiffs: did the circuit court err by granting summary judgment?

¶28. The defendants cross-appealed on one issue: whether judicial estoppel bars the remaining claims by JRE against the defendants because JRE omitted this damages suit in its 2009 bankruptcy filings.

¶29. While the appeal was in progress, this Court recognized that the Mississippi Secretary of State had revoked or administratively dissolved JRE's status as a foreign LLC in good standing on December 5, 2011, and that the LLC was not in good standing when it filed its complaint. On December 5, 2018, this Court ordered the parties to submit supplemental briefing regarding whether the Court may take judicial notice of its registration status and the effect of the dissolution or revocation on JRE's right to pursue its claims.

## STANDARDS OF REVIEW

¶30. "This Court reviews grants of summary judgment [*de novo*]." ***Wallace v. Town of Raleigh***, 815 So. 2d 1203, 1208 (¶ 19) (Miss. 2002) (citing ***Owen v. Pringle***, 621 So. 2d 668, 670 (Miss. 1993)). Summary judgment is required "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Miss. R. Civ. P. 56(c). The party resisting summary judgment may not rely solely on allegations in the pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Miss. R. Civ. P. 56(e).

¶31. We review questions of law *de novo*. ***Cotton v. Paschall***, 782 So. 2d 1215, 1217 (¶ 10) (Miss. 2001).

11

¶32.   Standing, as a question of law, is reviewed *de novo. **Rosenfelt v. Miss. Dev. Auth.,*** 262 So. 3d 511, 515 (¶ 11) (Miss. 2018).

¶33.   "[W]e review the circuit court's application of judicial estoppel using the abuse of discretion standard." ***Adams v. Graceland Care Ctr. of Oxford, LLC***, 208 So. 3d 575, 580 (¶¶ 12-13) (Miss. 2017) ("[T]he appropriate analysis requires an appellate court to use the abuse of discretion standard to review the trial court's determination that judicial estoppel is or is not applicable. Then, an appellate court would use the [*de novo*] standard to determine whether summary judgment was or was not appropriate.").

## ANALYSIS

    **I.**     **May the Court take judicial notice that on December 5, 2011, JRE was administratively dissolved and/or had its foreign LLC registration revoked under Mississippi law?**

¶34.   Because the issue concerns whether JRE could maintain its suit, we address it first.

¶35.   The Mississippi Rules of Evidence authorize a court "judicially [to] notice a fact that is not subject to reasonable dispute" when the fact "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Miss. R. Evid. 201. Further, the court is empowered to take "notice on its own" and "at any stage of the proceeding." *Id.*

¶36.   "This Court, of course, may take judicial notice of adjudicative facts at any stage of the proceedings, whether requested to do so by a party or not." ***Adm'rs of the Tulane Educ. Fund v. Cooley***, 462 So. 2d 696, 699 (Miss. 1984) (citing ***Moore v. Grillis***, 205 Miss. 865,

12

39 So. 2d 505 (1949)). *See also* **McGill v. City of Laurel**, 252 Miss. 740, 173 So. 2d 892, 903 (1965) ("We take judicial knowledge of that which is commonly known.")

¶37.    The Court is authorized to take judicial notice of any information "helpful and appropriate, including official public documents, records and publications." **Enroth v. Mem'l Hosp. at Gulfport**, 566 So. 2d 202, 205 (Miss. 1990). We have held that "there can be no doubt . . . that judicial notice can be taken of documents in the office of the Secretary of State as one of [the] departments from which judicial knowledge may be acquired." **Miss.-Gulfport Compress & Warehouses v. Pub. Serv. Comm'n**, 189 Miss. 166, 196 So. 793, 795 (1940) (citing **Briscoe v. Buzbee**, 163 Miss. 574, 143 So. 407 (1932); **Witherspoon v. State**, 138 Miss. 310, 103 So. 134 (1925)).

¶38.    Accordingly, we find that the Court may judicially notice the following relevant facts:

- JRE is a Louisiana limited liability company;

- JRE previously registered with the Mississippi Secretary of State as a foreign limited liability company;

- The Mississippi Secretary of State administratively revoked JRE's status as a foreign limited liability in good standing on December 5, 2011;

- JRE and Yacht Club filed the complaint in this case on December 19, 2011;

- JRE was reinstated as a foreign limited liability company in good standing by the Mississippi Secretary of State on December 7, 2018.

**II.    Does the fact that on December 5, 2011, JRE was administratively dissolved and/or had its foreign LLC registration revoked under Mississippi law affect its standing to pursue its claims?**

¶39. Because the Mississippi Secretary of State administratively revoked JRE's status as foreign limited liability before JRE filed its complaint, we ordered JRE and the defendants to file supplemental briefs to address the effect on JRE's standing to maintain this action.[8]

¶40. "Standing is a jurisdictional issue which may be raised by any party or the Court at any time . . . ." *Kirk v. Pope*, 973 So. 2d 981, 989 (Miss. 2007) (¶ 58) (internal quotation marks omitted) (quoting *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000)). To satisfy standing, there must be a valid, present, and complete cause of action in existence along with a right to relief upon institution of the suit. *See, e.g.*, *Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 28 (¶ 24) (Miss. 2015) ("[S]tanding must exist when litigation is commenced and must continue through all subsequent stages of litigation, or the case will become moot." (internal quotation marks omitted) (quoting *In re City of Biloxi*, 113 So. 3d 565, 572 (Miss. 2013))).

¶41. In their briefs, both parties scrutinize the standing of a dissolved or revoked LLC to pursue claims upon its reinstatement; however, both parties affirm this eligibility is *not* an issue of standing. Instead, both parties aver that the right to bring suit in the present case involves *capacity*.[9] Standing is different than capacity, which concerns the formal ability of

---

[8]The Mississippi Foreign Limited Liability Company Act requires a foreign limited liability company "transacting business in this state" to register before it may "maintain any action, suit, or proceeding in any court of this state." Miss. Code. Ann. § 79-29-1013(1) (Rev. 2014). A foreign limited liability company with an administratively revoked registration may not maintain a suit until registration is reinstated. Miss. Code Ann. § 79-29-1023(8) (Rev. 2014).

[9]According to JRE and Yacht Club, "by obtaining reinstatement, [JRE] has simply sought to cure an arguable procedural deficiency which has no bearing on the merits of the substantive claim." The defendants "submit that the constraint on Jourdan River Estates[']

14

a party to sue or to be sued. *See **Burley v. Douglas***, 26 So. 3d 1013, 1025-26 (¶ 45) (Miss. 2009) (Kitchens, J., concurring) ("Basically put, the capacity to sue is the right to come into court. It is distinguishable from standing to sue which is a right to relief, which goes to the existence of the cause of action." (internal quotation marks omitted) (quoting 67A C.J.S. *Parties* § 11 (2008))); ***S. Trucking Serv., Inc. v. Miss. Sand & Gravel, Inc.***, 483 So. 2d 321, 323 (Miss. 1986) ("It is the rule everywhere that 'in every action there must be a real plaintiff, who is a person in law and who is possessed of a legal entity and capacity to sue.'" (quoting ***Collins v. Gen. Elec. Co.***, 239 Miss. 825, 833, 123 So. 2d 609, 613 (1960))).[10]

¶42.    The Court finds that JRE's lack of capacity has been cured. JRE reregistered as a foreign limited liability company in good standing with the Mississippi Secretary of State. All parties accommodated reregistration pending this appeal, and all parties consented to supplement the record regarding the LLC's continued existence. *See **Funderburg***, 6 So. 3d at 442 ("In the present case, the Appellants were given such an opportunity to substitute the real party in interest.").

------

filing suit is more properly considered an issue of capacity to sue, or statutory standing, than constitutional standing."

[10]Mississippi Rule of Civil Procedure 17(a) sets minimal requirements for capacity to sue and to be sued: litigation between real parties in interest. Miss. R. Civ. P. 17(a) ("An executor, administrator, guardian, bailee, trustee, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his representative capacity."). When the party is not a real party in interest, or otherwise lacks capacity to bring suit, an action may not be maintained. *See **Funderburg v. Pontotoc Elec. Power Ass'n***, 6 So. 3d 439, 442 (¶ 11) (Miss. Ct. App. 2009) ("Rule 17(a) of the Mississippi Rules of Civil Procedure requires that a claim be filed on behalf of the real parties in interest. [Plainitiff] could not be such a real party in interest because it had been dissolved more than eight years before the alleged incident took place.").

¶43. Accordingly, we find this issue on appeal has been waived, expressly or impliedly, by the parties. The Court may decline to address capacity under Mississippi Rule of Civil Procedure 17(a) when the parties have ratified the existence of the real party in interest to the suit and there is no present defect regarding capacity.[11] *See **Miss. Valley Silica Co., Inc. v. Barnett**,* 227 So. 3d 1102, 1110 (¶ 14) (Miss. Ct. App. 2016) ("Valley's objection is not a jurisdictional issue of 'standing' but a real-party-in-interest objection, which may be waived if not timely asserted." (citing M.R.C.P. 17(a))), *abrogated on other grounds by **Portis v. State**,* 245 So. 3d 457 (Miss. 2018); ***Doe v. Holmes Cty. Sch. Dist.**,* 246 So. 3d 920, 924-25 (¶ 17) (Miss. Ct. App. 2018) ("'[U]nlike standing, the lack of which cannot be waived or cured, capacity to sue can be cured' on remand and is not a jurisdictional issue . . . ." (quoting ***Lewis v. Ascension Parish Sch. Bd.**,* 662 F.3d 343, 347 (5th Cir. 2011))).

¶44. Therefore, we hold that this question is not an issue of standing but of capacity, and both parties have waived the issue on appeal.

### III. On direct appeal, did the circuit err by granting partial summary judgment in favor of the defendants?

---

[11]Under the rule,

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Miss. R. Civ. P. 17(a).

16

¶45.     The circuit court divided its analysis between the claims pertinent to JRE and those regarding Yacht Club. We do the same.

### A.      JRE

### 1.      Claims barred for lack of standing

¶46.     JRE brought claims against the defendants for harassment and intimidation of its agents and intentional infliction of emotional distress on its agents; assault on its agents; and false imprisonment. As the trial court noted, these causes of action are against "the person of JRE's employees . . . [and not] against the [entity] of JRE." As a result, the "real part[ies] in interest" for these claims are JRE's employees, not JRE. *Kirk*, 973 So. 2d at 988 (¶ 21) (Miss. 2007). JRE lacks standing to bring these claims. *Id.* The circuit court did not err by granting summary judgment on these grounds.

¶47.     Further, the plaintiffs did not assign as error or make any argument respecting this portion of the circuit court's order. Therefore, argument against the dismissal of these claims is waived. *See, e.g.*, *Collins v. City of Newton*, 240 So. 3d 1211, 1221 (¶ 34) (Miss. 2018) ("Because the issue was not argued in . . . appellate briefing, we consider it abandoned and waived." (citing *Sumrall v. State*, 758 So. 2d 1091, 1094 (Miss. Ct. App. 2000))); *Petty v. Baptist Mem'l Health Care Corp.*, 190 So. 3d 17, 20 (¶ 7) (Miss. Ct. App. 2015) (plaintiff "failed, on appeal, to raise any arguments regarding the circuit court's grant of summary judgment on her claims of tortious interference and defamation, [and] she has now waived those issues.").

### 2.      Claims barred by the statute of limitations

17

¶48. Except for five claims against Scott Favre, the circuit court applied against all defendants the statute of limitations bar with respect to JRE's remaining claims. The statute of limitations for libel, slander, and slander of title is one year. Miss Code Ann. § 15-1-35 (Rev. 2014). The statute of limitations for enumerated intentional torts is one year. *Id*. The catch-all statute of limitations for tort claims is three years. Miss. Code Ann. 15-1-49 (Rev. 2014). The circuit court was correct that all remaining allegations were committed outside the relevant limitations period. JRE makes several unavailing arguments in its attempt to circumvent the statute of limitations.

¶49. First, JRE points to two events that occurred within one year of the filing of the complaint:

> (1) July 2011: The Board of Supervisors meeting at which an attorney speaking on behalf of Cindy Favre and Jefferson Parker persuaded the Board to decline to extend the JRE/[Yacht Club conditional use permit] by claiming, in pertinent part, that [Yacht Club] was not entitled to an extension because JRE and [Yacht Club] had failed to make sufficient progress in developing the property . . . .

> (2) August 2011: Cindy Favre confronted a JRE contractor attempting to access the [Yacht Club] property via Nicola Road and deterred the contractor from performing services on the JRE track by claiming, without any objectively reasonable basis, that JRE invitees and licensees would be trespassing, and subject to prosecution for criminal trespass, if they attempted to access the [Yacht Club] tract via Nicola Road.

JRE's reliance on these two events is misplaced. The circuit court did not apply the statute of limitations to any claims arising from these events. As the circuit court noted, Yacht Club took possession of the property in February 2011. Claims based on allegations that occurred after February 2011 are pertinent to Yacht Club, not JRE. The circuit court correctly barred

18

Yacht Club's claims on other grounds, namely, the **Noerr-Pennington** doctrine, not the statute of limitations.

¶50.   Second, JRE attempts to tie all the events together and to argue that the statute of limitations was tolled because the defendants engaged in a civil conspiracy to obstruct development of the property, specifically, to commit conduct related to slander, defamation, and slander of title. Civil conspiracy is not a specifically enumerated claim in the plaintiffs' complaint. But the circuit court analyzed the argument because of the plaintiffs' general claim of "[a]ny other applicable theory of law giving rise to a cause of action."

¶51.   The circuit court cites a case decided by the Court of Appeals for the proposition that civil conspiracy is an intentional tort that carries a one-year statute of limitations. **McGuffie v. Herrington**, 966 So. 2d 1274, 1278 (¶ 8) (Miss. Ct. App. 2007) (citing **Gasparrini v. Bredemeier**, 802 So. 2d 1062 (Miss. Ct. App. 2001)). The trial court noted that "[t]he facts relied [upon] for the alleged civil conspiracy are recitations of the facts alleged in the 2008 complaint." And as the claim is "[s]imilar to the other enumerated intentional torts, any claim[s] by [p]laintiffs for civil conspiracy are barred by the one-year statute of limitations."

¶52.   This Court previously has said that the statute of limitations for a claim of civil conspiracy carries a three-year statute of limitation. **Carter v. Citigroup, Inc.**, 938 So. 2d 809, 817 (¶ 39) (Miss. 2006) (citing **Am. Bankers' Ins. Co. v. Wells**, 819 So. 2d 1196, 1200 (Miss. 2001)). *See also* **Rankin v. Am. Gen. Fin., Inc.**, 912 So. 2d 725, 726 (¶ 2) (Miss. 2005) ("Unless it is tolled, the statute of limitations on all of the claims [including civil

19

conspiracy] asserted by the Plaintiffs is three years or less and had therefore run by the time Plaintiffs filed suit." (citing Miss. Code Ann. § 15–1–49 (Rev. 2003))).

¶53.    Upon review, JRE contended a conspiracy existed as early as 2007, more than three years before the filing of the complaint in this case. Specifically, JRE claimed that the defendants "have systematically conspired during a time from September 2007 to the present [filing of complaint, December 19, 2011,] to destroy plaintiffs' business and deprive plaintiffs of the legitimate use of their property." The record reflects—and JRE asserted—that the defendants were cognizant of such collusion. Yet, despite the defendants' allegedly maintaining a conspiracy, the plaintiffs failed to pursue this action within the prescribed statute of limitations.

¶54.    Further, JRE instituted an action seeking recovery from the defendants' collaborations; but JRE dropped those claims when it filed its amended complaint in October 2008. JRE alleged in its September 2008 complaint that the defendants "constructed, authorized the construction of, and/or colluded in the construction of the gate across Nicola Road." The claims seeking damages from that incident were dismissed without prejudice. But JRE and its successor did not return to court to seek damages for this claimed conspiracy until December 2011. *See **Koestler v. Miss. Baptist Health Sys., Inc.***, 45 So. 3d 280, 283 (¶ 11) (Miss. 2010) ("[T]he statute of limitations ran long before the second suit was filed.").

¶55.    JRE's complaint cites specific activities of the defendants—such as construction of the gate—as "representative" of a "systematic, joint, ongoing conspiracy to spread the false impression that plaintiffs do not have the legal right to access their property." But the trial

court addressed the viability of claims stemming from those incidents. And while there may be instances when this Court can recognize an ongoing conspiracy, JRE's conspiracy claim here fell outside the statute of limitations. The later incidents JRE cites are not sufficient to extend this conspiracy claim indefinitely.[12]

¶56.    Moreover, the circuit court went further and addressed the civil conspiracy claim on the merits, correctly finding that "[e]ven if the slander of title claims were not barred by the statute of limitations, the claims would still fail." The plaintiffs alleged that "Jefferson Parker, Cindy Favre[,] and Scott Favre conspired to commit slander of title by: (1) stating that JRE's easement was not sufficient to serve as a[n] access [point] for the condominium development, (2) placing a farm gate on Nicola Road[,] . . . and (3) claiming to own Nicola Road and/or JRE's easement." But, as the circuit court rightly observed, these statements and acts were "the subject of the [c]hancery [c]ourt action, Hancock County Cause No. 08-786[, and] [n]one of the issues in the suit [was] found to be frivolous." "Communications published in due course of a judicial proceeding are absolutely privileged and will not sustain an action for slander of title." *Mize v. Westbrook Constr. Co. of Oxford, LLC*, 146 So. 3d 344, 349 (¶ 13) (Miss. 2014) (citing *Dethlefs v. Beau Maison Dev. Corp.*, 511 So. 2d 112, 117 (Miss. 1987)). "All citizens have the constitutional right to petition our courts to adjudicate honest disputes." *Id.* at 350 (¶ 14). This Court affirms the circuit court's holding that "[t]he events surrounding [the chancery court] suit may not be the basis for a slander of

---

[12]JRE points to acts committed after February 2011; but those claims are pertinent to Yacht Club, not JRE. JRE also alleged that the defendants caused the placement of a large pile of rocks over JRE's right of way in April 2009; but the incident was not argued on appeal.

title action." Accordingly, the trial court did not err by granting partial summary judgment regarding conspiracy.

¶57.    Finally, JRE argues that the continuing tort doctrine tolled the statute of limitations on its claims because of the "continuing presence of the gate[s] and signs" that "impeded" development of the property.

¶58.    This Court observes that

> [a] continuing tort is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.

*Humphries v. Pearlwood Apartments P'ship*, 70 So. 3d 1133, 1135 (¶ 8) (Miss. Ct. App. 2011) (internal quotation marks omitted) (quoting *Pierce v. Cook*, 992 So. 2d 612, 619 (¶ 25) (Miss. 2008)). The circuit court noted correctly that "[t]he construction and continual existence of the Nicola Road gate does not constitute a continuing tort as explained in *Humphries*." The Darwood Point gate was built once in 2007, not multiple times; and its continued existence after its placement does not qualify as a continuing tort. *See Humphries*, 70 So. 3d at 1136 (¶ 11) ("We find that the construction . . . was one event, not a repeated action.")

¶59.    The continuing tort doctrine does not apply here, because the alleged "harm reverberates from a single, one-time act or omission." *Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993). Moreover, JRE did not seek damages stemming from construction of the

gate until December 2011 and had dismissed such claims in a lawsuit more than three years before.

¶60. Accordingly, regarding JRE, we find that the circuit court did not err by granting partial summary judgment.

### B. Yacht Club

¶61. In its order, the circuit court noted that Yacht Club has owned the Yacht Club property only since February 2011. The only allegations made by Yacht Club that are said to have occurred after that time are as follows:

(1) Counsel for the defendants made false representations to the Hancock County Board of Supervisors regarding Yacht Club's access to Nicola Road in February and July of 2011.

(2) Cindy Favre told Yacht Club's employees that they were illegally on the property on August 11, 2011.

(3) On September 25, 2011, defendants persuaded Hancock County employees to place a sign on Nicola Road stating "county maintenance ends here."

(4) The gates on Nicola Road still existed during this time, constituting a continuing tort.

(5) The defendants made threatening comments to Mike Felter, a JRE/Yacht Club representative, and Yacht Club employees.

¶62. The circuit court disposed of the second, fourth, and fifth allegations using the same continuing tort and standing analyses that it had used for JRE. We agree with the circuit court and its disposition of these claims. For the remaining claims arising out of the first and third allegations, the court applied the *Noerr-Pennington* doctrine, which we now specifically address.

23

### 1.    Claims barred by the *Noerr-Pennington* doctrine

¶63.    In *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So. 2d 163 (Miss. 2001), this Court expressly adopted the *Noerr-Pennington* doctrine. "The essence of the doctrine is that parties who petition the government for governmental action favorable to them cannot be [held civilly liable] . . . . [including] 'petitions' made to the . . . judicial branch[] of government, [*e.g.*], in the form of administrative or legal proceedings . . . ." *Id.* at 171 (¶ 30) (quoting *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988)).[13] "The *Noerr-Pennington* doctrine applies in state court and to state law claims because it is grounded on First Amendment rights to petition the government." *Id.* at 171 (¶ 31). This Court has not had many opportunities to examine the doctrine following our decision in *Harrah's*.[14]

_____

[13]*Noerr* refers to the Supreme Court's opinion in *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 128, 81 S. Ct. 523, 525, 5 L. Ed. 2d 464 (1961). The *Noerr* Court held that the defendants—major railroad companies—did not violate the Sherman Anti-Trust Act in a campaign to influence government action to advantage itself and to prejudice its competitors, long-distance trucking companies. *Id. Pennington* derives from *United Mine Workers of America v. Pennington*, 381 U.S. 657, 659, 85 S. Ct. 1585, 1587, 14 L. Ed. 2d 626 (1965). The Court in *Pennington*—in the context of actions by large mining concerns to monopolize commerce—similarly found that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." *Id.* at 670. The Supreme Court summarized the First Amendment foundation of its holdings in *Noerr* and *Pennington*: "[t]he same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 611-12, 30 L. Ed. 2d 642 (1972).

[14]The *Harrah's* Court applied the *Noerr-Pennington* doctrine to protect coordinated and extensive efforts by private actors to influence a government entity to deny a casino permit; specifically, the Court reversed and rendered a multi-million dollar jury

24

¶64. The circuit court applied the doctrine to all claims related to communications between the defendants and either the board of supervisors or the Hancock County employees, determining that those actions were petitions that were protected under the *Noerr-Pennington* doctrine. *See id.* at 171 (¶ 30). We affirm the trial court's application of the doctrine to these claims.

¶65. In February and July of 2011, counsel for the defendants petitioned Hancock County, requesting that the board of supervisors deny an extension of Yacht Club's conditional use permit. On September 25, 2011, the defendants requested that Hancock County employees place a sign on Nicola Road stating "county maintenance ends here." It is axiomatic that these activities are "petitions" to the government as contemplated in *Harrah's*, and the circuit court correctly determined that these actions could not be the basis for civil liability.

¶66. On appeal, JRE and Yacht Club argue that the *Noerr-Pennington* doctrine creates a privilege (*e.g.*, the spousal communications privilege) and that the privileged

---

verdict that favored plaintiffs who had alleged that various Mississippi casinos "conspired to oppose and defeat a proposal . . . seeking approval of the Mississippi Gaming Commission (MGC) to build a casino and automobile racetrack project on the Big Black River in Warren County." *Harrah's*, 812 So. 2d at 165 (¶ 1). This Court held that the "*Noerr–Pennington* doctrine applies in state court and to state law claims because it is grounded on First Amendment rights to petition the government. . . . and [is] equally applicable under state law." *Id.* at 171 (¶ 31). We—like other courts—found its application outside its anti-trust origins and held that "[t]he doctrine thus bars not only the [parties'] restraint of trade claims in this case, but also their claims for tortious interference and civil conspiracy." *Id.* at (¶ 32). *See also Video*, 858 F.2d at 1084 ("Although the *Noerr–Pennington* doctrine initially arose in the antitrust field, other circuits have expanded it to protect first amendment petitioning of the government from claims brought under federal and state laws, including section 1983 and common-law tortious interference with contractual relations." (citing *Evers v. Cty. of Custer*, 745 F.2d 1196, 1204 (9th Cir. 1984); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614 (8th Cir. 1980))).

25

communications discussed above still can be used as evidence for their claims. For example, JRE and Yacht Club contend that

> State court decisions interpreting common law privileges, [*e.g.*,] the judicial privilege [that] protects witnesses and attorneys in judicial proceedings, will show that state courts make the same distinctions: communications can be privileged, actions are not privileged; evidence of communications [that] are privileged can, where appropriate, be offered to show notice or the defendant's motive and intent in taking actions and making non-privileged statements.

¶67.    This Court interprets the *Noerr-Pennington* doctrine not to operate as a privilege, as the plaintiffs interpret it, but rather as an immunity bar from suit for claims based on the actions or communications of those petitioning the government. *Id.* at 171 (¶ 32) ("The doctrine thus bars not only the [parties'] restraint of trade claims in this case, but also their claims for tortious interference and civil conspiracy."). We are mindful that "[t]he Supreme Court has clearly stated that efforts to influence public officials will not subject individuals to liability . . . ." *Id.* at 172 (¶ 33) (quoting *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 861-62 (5th Cir. 2000)). *See also N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 914, 102 S. Ct. 3409, 3426, 73 L. Ed. 2d 1215 (1982) (Supreme Court overturned Mississippi Supreme Court's award of damages resulting from boycott activity when "major purpose of the [campaign] in this case was to influence governmental action"); *Bogoslavsky*, 626 F.2d at 614 ("[W]e adopt the district court's holding that the private citizens and their lawyer were absolutely privileged by the First Amendment to petition for the zoning amendment that caused plaintiffs' damages."). Therefore, the plaintiffs' privileges argument has no merit or relevance.

¶68.    The *Harrah's* Court included a "sham" exception to the *Noerr-Pennington* doctrine:

26

> We now outline a two-part definition of "sham" litigation. First, the lawsuit must be objectively baseless in a sense that no reasonable litigant could realistically expect success on the merits. . . . [S]econd[,] . . . the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor," through the "use [of] the governmental process—as opposed to the outcome of the process—as . . . [a] weapon."

*Harrah's*, 812 So. 2d at 172 (¶ 34) (quoting *Prof'l Real Estate Inv'rs v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)). JRE and Yacht Club argue that the defendants' actions were in bad faith and without claim of right. But, as the circuit court found, the defendants' actions were not so objectively baseless as to fall within the sham exception. The amount of resources and time used to ascertain the rights and access of different parties to Nicola Road evidences that the litigation and the actions surrounding it were not a sham. Further, as this Court held in *Harrah's*, "a plaintiff, as a matter of law, cannot satisfy the first prong of the 'sham' test—that the defendants' petitioning activities were objectively baseless—if those activities were, in fact, successful." *Harrah's*, 812 So. 2d at 173 (¶ 36) (citing *Columbia Pictures*, 508 U.S. at 60 n.5). Because Hancock County denied a conditional use permit for continued development of the project in 2011 as a result of the defendants' petitions and the petitions of other concerned parties over several years regarding the development, these actions do not meet the exception. *See Favre I*, 52 So. 3d 463; *see also City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380, 111 S. Ct. 1344, 1354, 113 L. Ed. 2d 382 (1991) ("The 'sham' exception to *Noerr* encompasses situations in which persons use the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon.")

¶69. Accordingly, regarding Yacht Club, we also find the circuit court did not err by granting partial summary judgment.

### C. Conclusion

¶70. As this Court observed in *Favre III*, "the circuit court did a skilled job in addressing and applying Mississippi law to each individual cause of action [pled] by [p]laintiffs in this case." *Favre III*, 212 So. 3d at 803 (¶ 6). We continue to agree. Regarding the claims on direct appeal, we hold that the court did not err by granting partial summary judgment in favor of the defendants and against JRE and Yacht Club.

**IV. On cross-appeal, did the circuit court err by finding that judicial estoppel does not bar the remaining claims by JRE against Scott Favre because JRE failed to include this damages suit in its 2009 bankruptcy filings?**

¶71. The defendants argued in the circuit court that JRE should be judicially estopped from bringing its suit for damages because JRE did not list that potential damages suit in its bankruptcy schedules in 2009. The circuit court denied this aspect of the defendants' motion for summary judgment, reasoning as follows:

> Plaintiffs listed all actions pending at the time of bankruptcy filing in the section listed as "Suits and Administrative Proceedings"; the current suit was not included, as it had yet to be filed. The [p]laintiffs listing of current suits in one section, but failure to repeat in another is mere inadvertence.

¶72. "As explained above, we review the circuit court's application of judicial estoppel using the abuse of discretion standard," but we "use the [*de novo*] standard to determine whether summary judgment was or was not appropriate." *Adams*, 208 So. 3d at 580 (¶¶ 12-13). We also acknowledge that this Court considers "denial of summary judgment [as] an

interlocutory order," which "may only be appealed by permission." ***Ne. Mental Health Mental Retardation Comm'n v. Cleveland***, 126 So. 3d 1020, 1024 (¶ 15) (Miss. Ct. App. 2013) (citing ***Hinds Cty. v. Perkins***, 64 So. 3d 982, 984 (¶ 7) (Miss. 2011)). However, the defendants are correct to the extent that judicial estoppel could have applied to those claims for which the trial court granted partial summary judgment.

¶73.    First, it is irrelevant that the suit "had yet to be filed." "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all *potential* causes of action." ***In re Coastal Plains, Inc.***, 179 F.3d 197, 208 (5th Cir. 1999) (emphasis added) (quoting ***Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n***, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). Moreover, "[t]he debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . to suggest that it may have a *possible* cause of action, then that is a 'known' cause of action such that it must be disclosed." ***Id.*** (emphasis added) (internal quotation marks omitted) (quoting ***Youngblood***, 932 F. Supp. at 867)). JRE's knowledge of the possible claims it had against the defendants required JRE to disclose the claims on its bankruptcy schedules, even though JRE had not filed the damages lawsuit.[15]

¶74.    Second, failure to disclose a claim in bankruptcy proceedings implicates judicial estoppel. ***Id.*** at 207-08; ***Kirk***, 973 So. 2d at 991-92 (¶¶ 31-40) (Miss. 2007). A party is

---

[15]As previously shown, JRE had asserted damages claims when it filed its 2008 declaratory judgment suit, and that suit was listed on the bankruptcy schedules. ***Favre II***, 148 So. 3d. at 364 (¶ 2). However, the damages claims were dismissed without prejudice prior to JRE's filing for bankruptcy; so the listing of the chancery court suit does not mean JRE disclosed its potential claims.

judicially estopped from taking an inconsistent position in different judicial proceedings if the following three elements are met: "'(1) its position is clearly inconsistent with the previous one; (2) the court . . . accepted the previous position; and (3) the non-disclosure [was not] inadvertent.'" *Kirk*, 973 So. 2d at 991 (¶ 32) (quoting *Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F.3d 330, 334 (5th Cir. 2004)).

¶75.    As noted above, the circuit court found that JRE's nondisclosure was "mere inadvertence," which concerns the third element of judicial estoppel. The problem is that the court made this finding at the summary judgment stage. Whether JRE acted inadvertently is a question of fact, and the plaintiffs presented evidence that JRE may not have acted inadvertently. For example, in the Mississippi Rule of Civil Procedure 30(b)(6) deposition of JRE, a JRE representative testified as follows:

> Q.    Okay. And in 2008 you still believed you had damage claims worth hundreds of thousands of dollars?
>
> A.    I do.
>
> Q.    In 2009, you're speaking for Jourdan River Estates here, you still believed you had damage claims against them worth hundreds of thousands of dollars, correct?
>
> A.    Correct.

¶76.    JRE acknowledged claims it believed to be "worth hundreds of thousands of dollars," yet it did not disclose them in the 2009 bankruptcy filings (or in any amended filings later). "A debtor's non-disclosure is '"inadvertent" only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" *Kirk*, 973 So.

30

2d at 991 (¶ 35) (quoting *Superior Crewboats, Inc.*, 374 F.3d at 335). Such testimony is evidence that JRE—at the least—knew of the claims at the time of the bankruptcy filing.

¶77.  "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Sherrod v. U.S. Fid. & Guar. Co.*, 518 So. 2d 640, 642 (Miss. 1987) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986)). The defendants presented credible evidence to the trial court to dispute JRE's claim that it acted inadvertently when it failed to list its potential suit for damages in its bankruptcy filings.

¶78.  But in accord with our precedent that a trial court lacks appellate jurisdiction to certify a denial of summary judgment as final under Mississippi Rule of Civil Procedure 54(b), this Court lacks appellate jurisdiction over these remaining claims pending in the trial court. *See Perkins*, 64 So. 3d at 988 (¶ 19) ("We find no compelling reason to abandon our current practice regarding interlocutory review of pretrial denials . . . ." (citing M.R.A.P. 5)); *Cleveland*, 126 So. 3d at 1024 (¶ 15) ("The [judge's] grant of partial summary judgment did not decide a claim between the two parties. Rather, it merely decided an issue within their claims . . . . And the denial of summary judgment is an interlocutory order that may only be appealed by permission." (citing *Perkins.*, 64 So. 3d at 984 (¶ 7))). Absent proper jurisdiction, we cannot address the denial of summary judgment regarding the claims remaining here.

¶79.  Therefore, this Court dismisses defendants' cross-appeal regarding judicial estoppel, and we remand the case to the circuit court for further proceedings.

## CONCLUSION

¶80.    This Court judicially notices the revocation and reinstatement of JRE. But we find that JRE's eligibility to bring suit involves capacity, an issue the parties have waived on appeal. On direct appeal, we affirm the circuit court's ruling granting partial summary judgment in favor of the defendants. On cross-appeal, we dismiss the defendants' appeal regarding the circuit court's ruling that judicial estoppel could not apply to the remaining claims, and we remand the case for further proceedings consistent with this decision.

¶81.    **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: DISMISSED AND REMANDED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**